STATE OF NORTH CAROLINA v. RICHARD WAYNE JOYNER

No. 226A89

(Filed 12 June 1991)

1. **Homicide § 21.5 (NCI3d)— murder—defendant's statement— premeditation and deliberation—sufficiency of evidence**

    The trial court did not err in a murder prosecution by denying defendant's motion to dismiss based on an exculpatory statement showing lack of premeditation and deliberation where the statement in no way indicates that defendant was provoked to shoot or that his action was reflexive. The evidence shows that defendant prepared to shoot the victim by loading his gun and putting the safety on before he got out of his car; defendant removed the safety after the victim arrived, knowing that shells were chambered and ready to be fired; defendant was approximately thirty feet from the victim when the victim directed a flashlight beam at defendant's face; the victim and defendant exchanged no words and had no physical contact; and defendant's statement is a factual account devoid of any words indicating provocation or surprise.

    **Am Jur 2d, Homicide § 439.**

2. **Assault and Battery § 83 (NCI4th)— secret assault—homicide by lying in wait—refusal to arrest assault judgment—error**

    The trial court erred by refusing to arrest judgment on defendant's conviction for secret assault where defendant was also convicted of murder based on lying in wait. To provide additional punishment for the assault underlying the murder conviction would serve little purpose other than to augment paper work, trial time, and the potential for error in an already overburdened court system.

    **Am Jur 2d, Assault and Battery § 56.**

**3. Criminal Law § 1352 (NCI4th) — murder — sentencing — McKoy error**

The trial court erred when sentencing defendant for murder by imposing a unanimity requirement for finding mitigating circumstances, and the error was not harmless because there was evidence to support at least some of the mitigating circumstances submitted but not found.

**Am Jur 2d, Criminal Law § 600.**

**Unanimity as to punishment in criminal case where jury can recommend lesser penalty. 1 ALR3d 1461.**

APPEAL of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by *Winberry, J.,* at the 15 May 1989 Criminal Session of Superior Court, NASH County, upon a jury verdict finding defendant guilty of first-degree murder. On 17 May 1990 this Court allowed defendant's motion to bypass the Court of Appeals on his related robbery with a dangerous weapon and secret assault charges. Heard in the Supreme Court 7 May 1991.

*Lacy H. Thornburg, Attorney General, by Debra C. Graves, Assistant Attorney General, for the State.*

*Ralph G. Willey, III, and Terry W. Alford for defendant appellant.*

WHICHARD, Justice.

Defendant was convicted of first-degree murder on the basis of premeditation and deliberation, felony murder, and lying in wait. He also was convicted of robbery with a dangerous weapon and secret assault. He was sentenced to death for the murder, to fourteen years imprisonment for the robbery (consecutive), and to six years imprisonment for the secret assault (concurrent). We find no error in the guilt phase of the murder trial. The State concedes, and we agree, that defendant is entitled to a new sentencing proceeding under *McKoy v. North Carolina,* 494 U.S. 433, 108 L. Ed. 2d 369 (1990). We find no error in the robbery trial. We arrest judgment on the secret assault conviction.

The State's evidence tended to show that around 7:00 p.m. on 1 December 1988, Ray Narron heard two gunshots in rapid

succession. When he discovered that a shot had penetrated his air conditioner, he called the Nash County Sheriff's Department to report the shooting.

Deputy Mike Boone arrived at Narron's home, which is across the street from Harvey Lee Skinner's trailer, at 7:27 p.m. Boone took Narron's statement and drove to other residences to see if anyone had information about the shooting. When Boone turned into Skinner's driveway, he saw Skinner's body lying on its back. He determined that Skinner was dead and that he had been shot.

Investigator Dennis Honeycutt testified that Skinner's Ford Ranger truck was parked in the driveway, a set of keys was on the ground near Skinner's knee, and a cardboard shotgun wadding was about eleven inches from the keys. Investigators also found an unopened moneybag on the ground about nine feet from the victim's body. The bag contained $50.00 worth of food stamps and $769.00 in cash.

Investigators found three Federal twelve-gauge, triple-aught buckshot shell casings in the victim's yard. Two shells were approximately two feet apart and thirty feet from the victim's body. Investigators found the third shell eleven feet from the victim's body.

Deputy Boyce Varnell testified that on the morning after the shooting he went to Narron's Trailer Park across the road from the store the victim operated. As Varnell knocked on the door of a trailer, he heard two people running down the hall. When a woman let Varnell in the trailer, defendant and a man who said he was defendant's brother came out of the back of the trailer. Defendant told Varnell he had heard the victim arguing about money with some black men. Defendant said he had been at work at the Pepsi-Cola plant the night before and he owned a twelve-gauge shotgun. Varnell testified that when he examined the gun he noted a strong odor of gunpowder, indicating that the gun had been fired recently. He also found four triple-aught Federal shells.

State Bureau of Investigation Agent Michael Gavin testified that the murder weapon was a semi-automatic shotgun capable of discharging three shots in one and one-half seconds. He also testified that defendant's shotgun fired the shells found at the crime scene.

Deputy Milton Reams testified that defendant's supervisor said defendant had not been at work for a week. When Reams told

defendant the deputies knew he had not been honest with them, defendant confessed to shooting the victim. Reams read defendant's statement into evidence.

In the statement, defendant said he lived at the trailer park with his brother, Daniel Joyner, and Betty and Larry Whitbeck. Defendant said he had been thinking for a few days about robbing the victim but did not want to do so in a place where the victim could see him. When he left the trailer at 4:00 p.m. on 1 December 1988, he took his shotgun. During the day, defendant smoked about six or seven marijuana cigarettes. Defendant said after he decided at about 5:00 p.m. to rob the victim, he drove down a path behind the victim's trailer and loaded his gun. He went to the back of the victim's trailer and waited for about an hour and a half. When Skinner parked his Ranger and got out, defendant took the safety off and stepped around the corner. The victim shined a flashlight beam on defendant, and defendant shot him. Defendant said the victim fell to the ground after the second shot. Defendant shot him a third time, looked without success for the money, picked up the flashlight, and ran to his car. He drove around, smoked more marijuana, and threw the victim's flashlight in the woods before returning home.

Reams also testified that after making the confession, defendant accompanied deputies to the victim's trailer and retraced his actions of the previous night. With defendant's consent, the police photographed him during the demonstration.

Dr. Louis Levy, a forensic pathologist, testified that he noted thirty-five entry and exit wounds on the victim's body, mostly on the left side. There were some entrance wounds on the victim's back. He testified that the wounds resulted from several shotgun blasts and concluded that the wound to the left flank was the predominant cause of death. He also discovered a plastic shotgun wad under the victim's tee shirt and some wadding in the body. The wadding contained cloth fibers matching the fibers of the victim's shirt. In Levy's opinion, the présence of wadding beneath the victim's clothing and inside his body indicated that the shot transporting the wad was fired from a distance of about ten feet. The angle of the wound to the left flank was upwards, indicating that the body was on the ground when shot.

Defendant did not present evidence in the guilt phase.

GUILT PHASE

[1]  Defendant assigns as error the trial court's denial of his motion to dismiss the charge of first-degree murder on the basis of malice, premeditation and deliberation. Defendant contends his statement shows he did not premeditate and deliberate before shooting the victim. He argues that his statement is exculpatory and that the State is bound by all exculpatory evidence contained in the statement not contradicted by other evidence.

Premeditation means thought before action, " 'for some length of time, however short.' " *State v. Biggs*, 292 N.C. 328, 337, 233 S.E.2d 512, 517 (1977) (quoting *State v. Reams*, 277 N.C. 391, 401, 178 S.E.2d 65, 71 (1970) ). Before a jury may consider the charge of first-degree murder based upon premeditation and deliberation, the State must present substantial evidence of each essential element of the offense and of defendant as the perpetrator. *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980).

> The trial court in considering [motions to dismiss] is concerned only with the sufficiency of the evidence to carry the case to the jury and not with its weight. . . . The trial court's function is to test whether a *reasonable inference* of the defendant's guilt of the crime charged may be drawn from the evidence.

*Id.* at 99, 261 S.E.2d at 117 (citations omitted).

Whether an action is premeditated depends on whether thought preceded action, not the length of the thought. *State v. Britt*, 285 N.C. 256, 262, 204 S.E.2d 817, 822 (1974). Further, both premeditation and deliberation are mental processes generally proven by actions and circumstances surrounding the killing.

> Deliberation means an intent to kill executed by the defendant in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation. . . . Premeditation and deliberation refer to processes of the mind. They are not ordinarily subject to proof by direct evidence, but must generally be proved, if at all, by circumstantial evidence. . . . Among the circumstances to be considered in determining whether a killing was with premeditation and deliberation are: (1) want of provocation on the part of the deceased; (2) the conduct

STATE v. JOYNER

[329 N.C. 211 (1991)]

and statements of the defendant before and after the killing; (3) threats and declarations of the defendant before and during the course of the occurrence giving rise to the death of the deceased; (4) ill-will or previous difficulty between the parties; (5) the dealing of lethal blows after the deceased has been felled and rendered helpless; and (6) evidence that the killing was done in a brutal manner.

*State v. Williams*, 308 N.C. 47, 68-69, 301 S.E.2d 335, 348-49, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177 (1983) (citations omitted); *see also State v. Jackson*, 317 N.C. 1, 23, 343 S.E.2d 814, 827 (1986).

It is well established that "[w]hen the State introduces into evidence a defendant's confession containing exculpatory statements which are not contradicted or shown to be false by any other facts or circumstances in evidence, the State is bound by the exculpatory statements." *State v. Williams*, 308 N.C. at 66, 301 S.E.2d at 347. However, defendant's argument that his statement was exculpatory is incorrect. The statement in no way indicates that defendant was provoked to shoot or that his action was reflexive. Defendant gave the investigators the following account:

When I took the safety off I stepped around the corner and Skinner turned a flashlight on me.

Then I shot Skinner. Skinner did not say anything nor did I. Then I fired a second time. . . .

. . . .

Then I shot again and had taken three or four steps on the second shot. I walked closer because he scared me when he screamed. We did not speak on the second shot. He just screamed again.

Skinner was still standing after the first shot. The second shot, Skinner hit the ground.

On the whole, the statement is a factual account devoid of any words indicating provocation or surprise. Indeed, the statement's only implication of a perception by defendant is his explanation that he advanced because Skinner "scared me when he screamed." However, Skinner did not scream until the second shot, the shot that felled him. The statement does not indicate in any way that defendant fired because of a spontaneous reaction or because he was provoked.

The evidence shows, instead, that defendant prepared to shoot the victim by loading his gun and putting on the safety before he got out of his car. After the victim arrived, defendant removed the safety, knowing that shells were chambered and ready to be fired. Defendant was approximately thirty feet from the victim when the victim directed a flashlight beam at defendant's face. The victim and defendant exchanged no words and had no physical contact.

These facts do not show legal provocation. *See State v. Williams*, 308 N.C. at 69, 301 S.E.2d at 349 (not legal provocation when one-hundred-year-old victim threw salt at defendant after defendant broke into her home). By defendant's own statement, he was not scared until he fired the second shot. Also, according to defendant's account and the physical evidence, the victim was lying on the ground when defendant shot a third time at close range. Certainly an unarmed victim hit twice by shotgun blasts and lying on his back has "been felled and rendered helpless," *id.*, when the assailant fires the third shot. The trial court did not err in submitting the charge of first-degree murder based upon premeditation and deliberation to the jury.

[2]   Defendant next contends that, in light of his conviction for murder based on lying in wait, the trial court erred in refusing to arrest judgment on his conviction for secret assault. We agree. We do not ascribe to the legislature the intent to punish a defendant both for a secret assault and for a murder when the assault is the very act that underlies the conviction for first-degree murder by lying in wait. *See State v. Perry*, 305 N.C. 225, 234-37, 287 S.E.2d 810, 816-17 (1982).

"The intent of the Legislature controls the interpretation of a statute." *Id.* at 235, 287 S.E.2d at 816. We believe the purpose of the secret assault statute is to provide for the protection of society in cases of assault from ambush which do not result in the death of the victim, while the purpose of the murder by lying in wait statute is to provide for such protection in cases of assault from ambush which do result in the death of the victim. *See State v. Allison*, 298 N.C. 135, 147-48, 257 S.E.2d 417, 425 (1979). A defendant convicted of first-degree murder by lying in wait is sentenced either to death or to life imprisonment. N.C.G.S. § 14-17. To provide for additional punishment for the assault underlying the murder conviction would serve little purpose other than to augment paper

work, trial time, and the potential for error in an already over-burdened court system. We do not believe the legislature, in enacting the secret assault and murder by lying in wait statutes, so intended, and we accordingly arrest the judgment entered upon the secret assault conviction.

SENTENCING PHASE

[3] Defendant contends, and the State concedes, that the instructions imposed a unanimity requirement for finding mitigating circumstances and were therefore improper under *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990); *see also State v. McKoy*, 327 N.C. 31, 394 S.E.2d 462 (1990).

> In *McKoy* the United States Supreme Court held unconstitutional North Carolina's capital sentencing jury instructions which required the jury to find the existence of a mitigating circumstance unanimously in order for any juror to consider that circumstance when determining the ultimate recommendation as to punishment. The Court reasoned that North Carolina's "unanimity" requirement was constitutionally infirm because it "prevent[ed] the sentencer from considering all mitigating evidence" in violation of the eighth and fourteenth amendments.

*State v. Sanderson*, 327 N.C. 397, 402, 394 S.E.2d 803, 805-06 (1990) (citations omitted).

After reviewing the record, we conclude that the trial court gave the unconstitutional *McKoy* instruction. Thus, unless the State demonstrates that the error was harmless beyond a reasonable doubt, defendant must have a new sentencing proceeding. *State v. McKoy*, 327 N.C. 31, 394 S.E.2d 462; N.C.G.S. § 15A-1443(b) (1988). The trial court submitted eight possible mitigating circumstances and the jury, operating under the unanimity instruction, found only one. There was evidence to support at least some of the circumstances not found. The State does not deny that the unanimity requirement may have affected at least one juror's vote on at least some of the seven circumstances not found and thus affected the jury's sentencing recommendation. *See State v. Smith*, 328 N.C. 99, 138-39, 400 S.E.2d 712, 734-35 (1991); *State v. Brown*, 327 N.C. 1, 29-30, 394 S.E.2d 434, 451-52 (1990). Because we cannot conclude that the *McKoy* error was harmless, we order a new sentencing proceeding.

Case No. 88CRS15500, first-degree murder: Guilt phase, no error; sentencing phase, new sentencing proceeding.

Case No. 88CRS15501, robbery with a dangerous weapon: No error.

Case No. 88CRS15502, secret assault: Judgment arrested.