STATE OF NORTH CAROLINA v. SHAWN DELAMAR TRUESDALE

No. 319A94

(Filed 5 May 1995)

**1. Appeal and Error § 155 (NCI4th)— assignment of error to instructions—failure to preserve issue for appeal—waiver**

Defendant failed to preserve for appellate review an issue as to an instruction by the trial court on premeditation where he did not object to the instruction to which he now assigns error. Furthermore, defendant waived his right to appellate review of this issue by failing specifically and distinctly to contend that the court's instruction constituted plain error. N.C. R. App. P. 10(c)(4).

**Am Jur 2d, Appeal and Error §§ 562 et seq.**

**2. Homicide § 494 (NCI4th)— instructions—circumstances showing premeditation and deliberation—supporting evidence**

The trial court's instructions that premeditation and deliberation could be shown by the use of grossly excessive force and by the infliction of lethal wounds after the victim was felled were supported by the evidence where the pathologist's testimony showed that the unarmed victim had been shot three times, and two eyewitnesses testified that defendant continued to shoot the victim after the first shot as the victim ran away from defendant and into a closet.

**Am Jur 2d, Homicide §§ 501 et seq.**

Homicide: presumption of deliberation or premeditation from the fact of killing. 86 ALR2d 656.

Homicide: presumption of deliberation or premeditation from the circumstances attending the killing. 96 ALR2d 1435.

**3. Homicide § 253 (NCI4th)— first-degree murder—sufficient evidence of premeditation and deliberation**

The State presented sufficient evidence of premeditation and deliberation to support the trial court's submission of an issue of defendant's guilt of first-degree murder to the jury where the evidence tended to show that the victim and defendant, who were drug dealers, appeared at the home of a drug distributor during the early morning hours; the victim stated that the person with him had a gun with which he was going to shoot him, and said he needed to talk with the distributor; the victim asked the distributor to lie to defendant so he would not think the victim had misappropriated drug money, but the distributor refused; defendant than pulled out his handgun and fired three shots into the unarmed victim; one bullet struck the victim in the back, and two shots struck him as he attempted to flee. A finding of premeditation and deliberation was supported by the victim's statement that defendant had a gun and was going to kill him, the victim's plea to the distributor to lie about the whereabouts of the drug money because he feared serious harm at the hands of defendant unless she did so, and defendant's firing of three shots into the unarmed victim.

**Am Jur 2d, Homicide §§ 437 et seq.**

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Ross, J., at the 4 April 1994 Criminal Session of Superior Court, Mecklenburg County, on a jury verdict finding defendant guilty of first-degree murder. Heard in the Supreme Court 11 April 1995.

*Michael F. Easley, Attorney General, by James P. Erwin, Jr., Special Deputy Attorney General, for the State.*

*Thomas H. Eagan for defendant-appellant.*

STATE v. TRUESDALE

[340 N.C. 229 (1995)]

WHICHARD, Justice.

Defendant was indicted for one count of first-degree murder, was tried noncapitally and found guilty, and was sentenced to life imprisonment. We find no prejudicial error.

The State's evidence tended to show the following:

Alisa Rucker testified that she and her husband lived in Charlotte in November 1993. Alisa met the victim, Ronald Moore, about three months prior to his death. They were involved in the use and sale of narcotics with a person known as Flat Top. Alisa testified that two weeks before Moore's death, Flat Top allotted him a small amount of crack cocaine. Moore was to intercept people going to Alisa's house to buy drugs because inside she and Flat Top had a large amount of cocaine which they wished to conceal.

Alisa's husband, Donald Rucker, testified that in the early morning of 15 November 1993, he awoke to a ruckus outside his bedroom window. He looked out and saw two shadows. He heard a male voice say, "I want to speak to Alisa," and he responded that she was sleeping. Moore, the victim, who was outside the window, then told Donald he had to talk to Alisa because "[t]here's a man out here got a gun and he's going to shoot me." Donald let Moore and the other man inside.

Alisa testified that on 15 November 1993, she awoke and saw defendant standing in her living room with Moore. Moore bent down and asked her to tell defendant he had paid her Flat Top's money. Alisa stated, "No," and then defendant asked her whether Moore had paid her Flat Top's money; she responded, "Hell, no." Defendant pulled out a silver handgun, pointed it toward the lower portion of Moore's body, and fired.

According to Alisa, after that shot Moore ran to the bedroom and defendant followed him. Alisa heard two or three more shots, and then defendant returned and said, "Excuse me, Lisa," and left the house.

Donald's testimony corroborated Alisa's. He found Moore on the floor in the bedroom closet. He testified that there were no bullet holes in the closet door.

Dr. J.M. Sullivan, a forensic pathologist, testified Moore had been shot three times—once in the back, once in the left wrist, and once in the upper left leg. Dr. Sullivan stated that the wound in Moore's back was consistent with being shot from behind.

Defendant's evidence tended to show the following:

Officer E.M. Corwin testified that defendant confessed to him that he shot Moore. Corwin took a lengthy written statement from defendant. He read from defendant's statement to the jury:

I asked [Moore] where my money was, and . . . he said, I gave it to Lisa, I gave it to Lisa. She said, no, you didn't, g-dd——it, no, you didn't. I believed Lisa, so I shot [Moore] in the leg. When he grabbed his leg and then came towards me like he was going to take the pistol, . . . I stepped back and shot him again. When he turned and started to go in the hallway, that's when I shot the third time, when he ran into the back room and got in the closet.

Defendant testified in his own behalf. He stated that Moore charged at him and that he pulled out his gun and tried to shoot at Moore's leg. After he did so, Moore jumped at him, threw his body at him, and two more shots just went off. Moore then ran to the bedroom closet. Defendant testified that there was very little time between when the victim came towards him and when he turned towards the bedroom. He indicated that it all happened in a matter of seconds.

[1] Defendant first assigns as error the instructions given on first-degree murder and second-degree murder, specifically, the use of the phrase "time, no matter how short" to describe premeditation. The trial court gave the pattern jury instruction on first-degree murder with a deadly weapon, N.C.P.I.—Crim. 206.10 (1989), which defendant specifically requested. After the instruction was given and the jury was excused for deliberations, the trial court asked whether there were any objections to the instructions as delivered. Defendant did not object to the premeditation and deliberation portion of the instruction to which he now assigns error. He thus failed to preserve this issue for appellate review. N.C. R. App. P. 10(b)(2); *see also State v. Allen,* 339 N.C. 545, 552-55, 453 S.E.2d 150, 154-55 (1995) (discussing preservation of assignments of error in jury instructions under Rule 10(b)(2)). Further, Rule 10(c)(4) provides:

**Assigning Plain Error**. In criminal cases, a question which was not preserved by objection noted at trial and which is not deemed preserved by rule or law without any such action, nevertheless may be made the basis of an assignment of error *where the judicial action questioned is specifically and distinctly contended to amount to plain error.*

N.C. R. App. P. 10(c)(4) (emphasis added). Defendant has failed specifically and distinctly to contend that the trial court's instruction on first- and second-degree murder constituted plain error. Accordingly, he has waived his right to appellate review of this issue. *See State v. Hamilton*, 338 N.C. 193, 208, 449 S.E.2d 402, 411 (1994).

[2] In this assignment of error, defendant also argues that the trial court's instructions on premeditation and deliberation were erroneous because the court instructed the jury that it could determine premeditation and deliberation from

> circumstances . . . such as the lack of provocation by the victim, the conduct of the Defendant before, during and after the killing, use of grossly excessive force, infliction of lethal wounds after the victim is felled and any other manner in which or means by which the killing was done.

After the court instructed the jury and asked whether there were any objections to the delivered instructions, defendant objected to the recitation of two circumstances from which premeditation and deliberation could be shown: the use of grossly excessive force and the infliction of lethal wounds after the victim is felled. He argues that these examples are confusing and are not supported by the evidence. We disagree.

The court gave the pattern jury instruction on premeditation and deliberation. *See* N.C.P.I.—Crim. 206.10. We previously have stated: "The elements listed [there] are merely examples of circumstances which, if found, the jury could use to infer premeditation and deliberation. It is not required that each of the listed elements be proven beyond a reasonable doubt before the jury may infer premeditation and deliberation." *State v. Cummings*, 326 N.C. 298, 315, 389 S.E.2d 66, 76 (1990).

As to "the use of grossly excessive force," the evidence supports this example. The pathologist's testimony supports an inference that excessive force was used because the unarmed victim had been shot three times. *See State v. Smith*, 328 N.C. 99, 137-38, 400 S.E.2d 712, 734 (1991) (evidence supported premeditation and deliberation example of "grossly excessive force" where unarmed victim was shot twice from close range). As to "the infliction of lethal wounds after the victim is felled," the evidence also supports this example. We recently noted: "Under the 'felled victim theory' of premeditation and deliberation, 'when numerous wounds are inflicted, the defendant

has the opportunity to premeditate from one shot to the next.' " *State v. Watson*, 338 N.C. 168, 179, 449 S.E.2d 694, 701 (1994) (quoting *State v. Austin*, 320 N.C. 276, 295, 357 S.E.2d 641, 653, *cert. denied*, 484 U.S. 916, 98 L. Ed. 2d 224 (1987)). Alisa and Donald Rucker both testified that defendant continued to shoot the victim after the first shot as the victim ran away from defendant and into a closet. The victim was shot three times. The evidence therefore supported this example. This assignment of error is overruled.

[3] In defendant's next assignment of error, he contends the trial court erred by instructing the jury on first-degree murder based on the theory of premeditation and deliberation because the evidence was insufficient to support a finding of premeditation and deliberation. Defendant moved to dismiss the first-degree murder charge at the close of the State's evidence and at the close of all the evidence. The trial court denied the motions.

In ruling on a motion to dismiss a first-degree murder charge, the trial court must consider the evidence in the light most favorable to the State and give the State every reasonable inference to be drawn therefrom. *State v. Jackson*, 317 N.C. 1, 22, 343 S.E.2d 814, 827 (1986), *judgment vacated on other grounds*, 479 U.S. 1077, 94 L. Ed. 2d 133 (1987). Substantial evidence must be introduced tending to prove the essential elements of the crime charged and that defendant was the perpetrator. *Id.* The evidence may contain contradictions or discrepancies; these are for the jury to resolve and do not require dismissal. *Id.* at 22-23, 343 S.E.2d at 827.

First-degree murder is the unlawful killing of a human being with malice, premeditation, and deliberation. *See* N.C.G.S. 14-17 (1993); *State v. Bonney*, 329 N.C. 61, 77, 405 S.E.2d 145, 154 (1991). "Premeditation" means that the defendant formed the specific intent to kill the victim "for some length of time, however short," before the murderous act. *State v. Joyner*, 329 N.C. 211, 215, 404 S.E.2d 653, 655 (1991) (quoting *State v. Biggs*, 292 N.C. 328, 337, 233 S.E.2d 512, 517 (1977)). "Deliberation" means that the defendant formed the intent to kill in a cool state of blood and not as a result of a violent passion due to sufficient provocation. *State v. Stager*, 329 N.C. 278, 323, 406 S.E.2d 876, 902 (1991). Premeditation and deliberation usually are not proved by direct evidence but "by actions and circumstances surrounding the killing." *Joyner*, 329 N.C. at 215, 404 S.E.2d at 655. Examples are:

(1) want of provocation on the part of the deceased; (2) the conduct and statements of the defendant before and after the killing; (3) threats and declarations of the defendant before and during the course of the occurrence giving rise to the death of the deceased; (4) ill-will or previous difficulty between the parties; (5) the dealing of lethal blows after the deceased has been felled and rendered helpless; and (6) evidence that the killing was done in a brutal manner.

*State v. Huffstetler*, 312 N.C. 92, 109-10, 322 S.E.2d 110, 121 (1984), *cert. denied*, 471 U.S. 1009, 85 L. Ed. 2d 169 (1985).

Taken in the light most favorable to the State, the evidence tended to show that the victim and defendant, who were drug dealers, appeared at the home of Alisa Rucker, a drug distributor, during the early morning of 15 November 1993. They awakened Donald Rucker. The victim identified himself, stated that the person with him had a gun with which he was going to shoot him, and said he needed to talk to Alisa. After entering the house, the victim approached Alisa and asked her to lie to defendant so he would not think the victim had misappropriated drug money. Alisa refused. Defendant then pulled out his handgun and fired three shots into the victim, who was unarmed. One bullet struck the victim in the back. Two struck him as he attempted to flee. Defendant then apologized to Alisa and left.

Under these facts, reasonable jurors could conclude that defendant acted with the purpose to kill the victim and formed the intent to kill before he acted. The victim's statement to Donald that defendant had a gun and was going to kill him supports a finding of premeditation and deliberation. Further, his plea to Alisa to lie about the whereabouts of the drug money suggested that he feared he was going to suffer serious harm at the hands of defendant unless she did so. This evidence also supports a finding that defendant must have "formed the intent to kill the victim over some period of time, however short," before he acted. Finally, defendant's firing of three shots into the victim, who was unarmed, also supports premeditation and deliberation. The trial court properly denied defendant's motion to dismiss. This assignment of error is overruled.

We conclude that defendant received a fair trial, free from prejudicial error.

NO ERROR.