STATE OF NORTH CAROLINA v. LEANDER TAYLOR AND BENNIE LEE TAYLOR, JR.

No. 498A93

(Filed 31 July 1996)

**1. Criminal Law § 375 (NCI4th)— noncapital first-degree murder—remarks of court—not an expression of opinion—not a disparagement of attorneys**

There was no error during a noncapital first-degree murder prosecution where defendants contended that the court continually expressed opinions on the evidence and disparaged defendants' attorneys. The remarks were made when the jury was not present, or were not an expression of an opinion or a disparagement of an attorney, the admonitions to the attorney were not error, one statement was a *lapsus linguae* rather than a Freudian slip showing bias, saying "sustained, sustained" rather than "sustained" did not emphasize the objection, the sustaining of an objection does not indicate that the court agrees with a statement made in connection with the objection, and sustaining objections on the court's own motion did not show that the court had abandoned its position of neutrality.

**Am Jur 2d, Trial §§ 282-284.**

**Remarks or acts of trial judge criticizing, rebuking, or punishing defense counsel in criminal case, as requiring new trial or reversal. 62 ALR2d 166.**

**2. Criminal Law § 468 (NCI4th)— noncapital first-degree murder—prosecutor's argument—no error**

There was no prosecutorial misconduct in a noncapital first-degree murder prosecution where defendants contended that the prosecutor argued that on several points the State's case was uncontradicted and, with other prosecutorial misconduct, gave the jury a substantial reason to wonder why defendants did not testify. A comment that defendants had not proved what they said they would prove in their opening statements is proper when defendant does not testify; arguing that there were witnesses whom defendant could have called but did not was not a comment on defendants' failure to testify; the State may argue from the evidence that a defendant has a bad character without violating N.C.G.S. § 8C-1, Rule 404(a); an argument which defend-

ants contended stated that they would disparage the Father and Son if given the chance was not so grossly improper that the court should have intervened *ex mero motu;* and there was no prejudice from a question to which the trial court sustained an objection.

**Am Jur 2d, Trial §§ 682, 683.**

**Propriety and effect of attack on opposing counsel during trial of a criminal case. 99 ALR2d 508.**

**Negative characterization or description of defendant, by prosecutor during summation of criminal trial, as ground for reversal, new trial, or mistrial—modern cases. 88 ALR4th 8.**

3. **Evidence and Witnesses § 2909 (NCI4th)— noncapital first-degree murder—character of victim and defendants— questions on redirect in response to cross-examination**

There was no error in a noncapital first-degree murder prosecution where evidence of the character of the victim and the two defendants was introduced on redirect examination in response to questions asked on cross-examination. The State, during redirect examination, is entitled to clarify and rebut issues raised during cross-examination.

**Am Jur 2d, Witnesses §§ 737-742.**

4. **Evidence and Witnesses § 2084 (NCI4th)— noncapital first-degree murder—one defendant neater than the other—not character evidence**

There was no prejudicial error in a noncapital first-degree murder prosecution where testimony was allowed that defendant Bennie Taylor was neater than his brother, defendant Leander Taylor. The testimony was merely the witness's description of how the two brothers looked and how he distinguished them and was not character evidence.

**Am Jur 2d, Expert and Opinion Evidence §§ 26, 31, 278.**

5. **Evidence and Witnesses § 665— noncapital first-degree murder—objection sustained—no motion to strike**

There was no error in a noncapital first-degree murder prosecution where the court failed to strike testimony that "they will

**STATE v. TAYLOR**

[344 N.C. 31 (1996)]

shoot you." The trial court sustained defendants' objections, but they did not request that the testimony be struck.

**Am Jur 2d, Trial §§ 461-482.**

**6. Homicide § 250 (NCI4th)— noncapital first-degree murder—killing during scuffle—premeditation and deliberation**

The trial court did not err in a noncapital first-degree murder prosecution by not granting defendants' motion to dismiss based on insufficient evidence of premeditation and deliberation. Although defendants asserted that the killing took place during a quarrel or scuffle while defendants were under the influence or provocation of the quarrel or scuffle, the State's evidence showed that Leander Taylor had threatened the victim weeks prior to the murder; he had told numerous people that he was going to kill the victim; he said to the victim and his friends before the fight began, "We're going to show y'all little young punks something tonight"; he said to his brother, "Shoot him, Bro. Shoot him"; defendant Bennie Lee, the brother, pulled his revolver from his pocket before the scuffle began; he pointed it first at someone else, then at the victim as Leander grabbed and punched him; and Bennie fired three successive shots, all of which hit the victim. Premeditation and deliberation may easily be inferred from this evidence.

**Am Jur 2d, Homicide §§ 437 et seq.**

**Homicide: presumption of deliberation or premeditation from the fact of killing. 86 ALR2d 656.**

**Homicide: presumption of deliberation or premeditation from the circumstances attending the killing. 96 ALR2d 1435.**

**Modern status of the rules requiring malice "afore-thought," "deliberation," or "premeditation," as elements of murder in the first degree. 18 ALR4th 961.**

**7. Criminal Law §§ 793, 796 (NCI4th)— noncapital first-degree murder—two defendants—instructions as to one on aiding and abetting and acting in concert**

The trial court did not err in a noncapital first-degree murder prosecution as to either defendant by charging on aiding and abetting and acting in concert as to defendant Leander. Although

defendant Bennie Lee contends that there was no evidence that he premeditated or deliberated the killing and that the jury was allowed to impute the premeditation and deliberation of Leander to him, there was plenary evidence for the jury to find that he killed the victim with premeditation and deliberation. And, although Leander says that he was either guilty as a principal or not guilty, the evidence was that Leander was struggling with the victim and told his brother to shoot him.

**Am Jur 2d, Homicide §§ 437 et seq.; Trial § 723.**

**8. Evidence and Witnesses § 3191 (NCI4th)— noncapital first-degree murder—testimony by officer as to statement by witness**

The trial court did not err in a noncapital first-degree murder prosecution by allowing a police officer to testify that a friend of the victim had said that defendant Bennie Lee had shot the victim. The testimony was properly admitted to corroborate the testimony of the friend, who had testified that Bennie Lee had shot the victim. Defendants did not ask for a limiting instruction. *Bruton v. United States*, 391 U.S. 123, does not apply because the friend is not a codefendant.

**Am Jur 2d, Witnesses §§ 1010-1029.**

**Admissibility of impeached witness' prior consistent statement—modern state criminal cases. 58 ALR4th 1014**

**9. Evidence and Witnesses § 928 (NCI4th)— noncapital first-degree murder—testimony as to what another told the witness—present sense impression**

There was no error in a noncapital first-degree murder prosecution where the court admitted testimony that a witness saw defendant Leander Taylor in the yard of her daughter with a sawed-off shotgun, the witness called her daughter, and the daughter said, "He's not after me. He's after Bryan [the victim] and Jermaine." The testimony as to what the daughter told the witness was admissible as a present sense impression.

**Am Jur 2d, Evidence §§ 659, 864; Homicide § 330.**

**10. Evidence and Witnesses § 761 (NCI4th)— noncapital first-degree murder—hearsay concerning prior incident—substantial other evidence**

There was no prejudicial error in a first-degree murder sentencing hearing where the victim's mother testified that the vic-

tim's grandmother had told her about an incident at a phone booth in which someone had hung up the phone on the victim and been looking for him with a gun. There was substantial other evidence of the incident at the telephone booth and of several threats; this evidence was cumulative and its admission could not have prejudiced defendants.

Am Jur 2d, Appellate Review §§ 752-755.

Supreme Court cases determining whether admission of evidence at criminal trial in violation of federal constitutional rule is prejudicial error or harmless error. 31 L. Ed. 2d 921.

11. Evidence and Witnesses § 3191 (NCI4th)— noncapital first-degree murder—conversation between deputy and victim's friend—admissible to corroborate friend's testimony

The trial court did not err in a noncapital first-degree murder prosecution by admitting evidence that a deputy was approached by a friend of the victim at the hospital after the shooting and told that defendant Bennie Lee had been fighting with the victim. The friend testified at length about the fight and the testimony of the deputy was admissible to corroborate the testimony at trial.

Am Jur 2d, Witnesses §§ 1010-1029.

12. Evidence and Witnesses § 761 (NCI4th)— noncapital first-degree murder—testimony of conversation between sheriff and police chief—other evidence of guilt—not prejudicial

There was no prejudicial error in a noncapital first-degree murder prosecution where the court admitted testimony from the chief of police in Garysburg that the Sheriff of Northampton County had asked him if he knew a male living in Garysburg named Pluck (defendant Bennie Lee's nickname), who may have been involved in a shooting. There was other strong evidence of defendants' guilt. Assuming this was hearsay, it added virtually nothing to the evidence against defendants.

Am Jur 2d, Appellate Review §§ 752-755.

13. Evidence and Witnesses § 3199 (NCI4th)— noncapital first-degree murder—interview notes of officer with witnesses—admissible to corroborate witnesses

There was no error in a noncapital first-degree murder prosecution in allowing the State to introduce the notes an officer

made of interviews with several of the witnesses where the notes were consistent with the witnesses' testimony and were introduced to corroborate the testimony of the witnesses. North Carolina has been liberal in allowing prior consistent statements in corroboration of witnesses and there is no reason under this liberal policy why notes taken of conversations should not be allowed to corroborate the testimony of witnesses.

**Am Jur 2d, Evidence §§ 675-677, 1316; Witnesses §§ 1010-1029.**

**14. Evidence and Witnesses § 1216 (NCI4th)— noncapital first-degree murder—statement by codefendant to officer—other defendant not implicated—admissible**

There was no error as to defendant Leander Taylor in a noncapital first-degree murder prosecution where an officer was allowed to testify that when defendant Bennie Lee was advised about the shooting, he said he "didn't know anything about it, that he had been home all night." The *Bruton* rule prohibits the introduction of a statement by defendant if the statement implicates a codefendant; the testimony of the officer here as to what defendant Bennie Lee said did not implicate defendant Leander in any way.

**Am Jur 2d, Evidence §§ 793-795.**

**15. Evidence and Witnesses § 1674 (NCI4th)— noncapital first-degree murder—autopsy photographs—unique features—chain of custody not necessary**

There was no error in a noncapital first-degree murder prosecution in the introduction into evidence of a picture which the pathologist testified appeared to be a picture of the person upon whose body she performed an autopsy. If an item to be introduced has unique features so it is readily identifiable, no chain of custody evidence is necessary.

**Am Jur 2d, Evidence §§ 961-968.**

**16. Evidence and Witnesses § 920 (NCI4th)— noncapital first-degree murder—questions as to what deputy told sheriff—motion in limine granted**

There was no error in a first-degree murder prosecution where a motion *in limine* was allowed to prevent defendants from asking questions on cross-examination of the sheriff as to

what one of his deputies had told him. Although defendants contend that N.C.G.S. § 8C-1, Rules 803 and 804 allow exceptions for hearsay in this case, they do not say how these two rules allow such testimony.

**Am Jur 2d, Evidence §§ 659, 669.**

**17. Evidence and Witnesses § 920 (NCI4th)— noncapital first-degree murder—what someone told deputy—no hearsay exception to show knowledge as a result of investigation**

The trial court did not err in a noncapital first-degree murder prosecution in granting a motion *in limine* precluding defendants from asking a deputy sheriff on cross-examination what someone told him. Defendants contend that the evidence should have been admitted because it would show the officer's knowledge as a result of the investigation, but there is no such exception to the hearsay rule. Additionally, the record does not show what the deputy sheriff's answer would have been.

**Am Jur 2d, Evidence §§ 659, 669.**

**18. Evidence and Witnesses §§ 2903, 3210 (NCI4th)— noncapital first-degree murder—questions on redirect—clarification of cross-examination—explanation of witness's demeanor**

The trial court did not err in a noncapital first-degree murder prosecution by allowing testimony from the victim's uncle that he was scared for his nephew and that his nephew was worried, and testimony from the victim's friend that the death of the victim had affected his ability to sleep. The statements by the uncle were made on redirect in order to clarify questions asked on cross-examination regarding the witness's conversation with defendant Leander Taylor; during redirect examination, the State is entitled to clarify and rebut issues raised during cross-examination. The testimony of the friend was admitted for the limited purpose of explaining his demeanor on the witness stand and the trial court properly instructed the jury. Moreover, the defendants fail to show prejudice; reasonable jurors would most likely conclude without testimony that the loss of a friend would be difficult for anyone and that most uncles would be concerned for their nephew.

**Am Jur 2d, Witnesses §§ 737-742.**

19. **Criminal Law § 112 (NCI4th)— noncapital first-degree murder—officer's notes—provided during rather than before trial—no Brady violation**

The prosection in a noncapital first-degree murder prosecution did not fail to comply with *Brady v. Maryland*, 373 U.S. 83, by giving defendants an officer's notes during trial instead of before trial. Due process and *Brady* are satisfied by the disclosure of the evidence at trial so long as disclosure is made in time for the defendants to make effective use of the evidence. Here the State provided defendants with the notes four days before the State rested, the State also provided defendants with telephone numbers by which the defendant could contact the witness, and defendants did not ask for a continuance or in any way indicate that they were having trouble locating the witness.

**Am Jur 2d, Depositions and Discovery §§ 418, 423, 428-429.**

20. **Evidence and Witnesses § 179 (NCI4th)— noncapital first-degree murder—evidence of motive—relevant and competent**

The trial court did not err in a noncapital first-degree murder prosecution by admitting evidence of a fight between the victim and defendant Leander Taylor's cousin as furnishing a motive for the shooting. The evidence of motive is relevant and competent.

**Am Jur 2d, Evidence §§ 307, 315, 435, 437.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgment imposing sentences of life imprisonment entered by Sumner, J., at the 27 September 1993 Criminal Session of Superior Court, Northampton County, upon jury verdicts of guilty of first-degree murder. Heard in the Supreme Court 13 September 1995.

The two defendants were indicted for the first-degree murder of Bryan Handsome, and their cases were joined for trial. The evidence tended to show that Leander Taylor had made numerous threats toward Bryan Handsome for several weeks prior to Mr. Handsome's death. Leander attempted to fight Bryan beside a telephone booth on one occasion. After Bryan walked away from the telephone booth, Leander called an unidentified person and asked that person to bring him his gun because he intended to kill Bryan. Elnora Lynch testified Leander had come to her daughter's house with a sawed-off shotgun

STATE v. TAYLOR

[344 N.C. 31 (1996)]

looking for Bryan. Marvin Handsome, who was Bryan's uncle, also testified Leander had relayed threats to Bryan through him.

On 16 October 1992 at midnight, Bryan and two of his friends, Jermaine Artis and Len Manley, went to Nick's Club. As they approached the club, they were accosted by Leander and his brother, Bennie Lee Taylor. Leander said, "We're going to show y'all little young punks something tonight." Leander then said to Bennie Lee, "Shoot him, Bro. Shoot him." Bennie Lee then drew a revolver and pointed it at Artis. Artis and Manley ran behind cars in the parking lot, and Bryan and Leander struggled. Bennie Lee then shot Bryan three times, killing him.

The jury found both defendants guilty as charged. The State did not seek the death penalty, and each defendant was sentenced to life in prison.

The defendants appealed.

*Michael F. Easley, Attorney General, by Gail E. Weis, Associate Attorney General, for the State.*

*Donnie R. Taylor for defendant-appellant Leander Taylor.*

*A. Jackson Warmack, Jr., for defendant-appellant Bennie Lee Taylor, Jr.*

WEBB, Justice.

[1] Each defendant first assigns error to what he says is the trial court's continuous expressions of opinion on the evidence and its disparagement of the defendants' attorneys. They cite numerous incidents which they say prove this error.

At one point during the cross-examination of a witness, a dispute arose as to previous testimony by the witness. The court excused the jury and conducted a hearing as to what the witness had said. At the end of the hearing, the court apologized to Leander's attorney because the attorney was found to have remembered the testimony correctly. Any expression of opinion by the court or disparagement of Leander's attorney during this hearing could not have prejudiced the defendants with the jury because the jury was not present when the remarks were made.

During the cross-examination of Elnora Lynch, the following colloquy occurred:

**STATE v. TAYLOR**

[344 N.C. 31 (1996)]

Q. All right. I—looks like—

MR. BEARD: Objection.

THE COURT: Sustained.

Q. What did you say?

THE COURT: She didn't say anything. Ask your question, Mr. Harvey.

The defendants do not say how this exchange constitutes error, and we see none. The statement, "She didn't say anything," is not an expression of an opinion or a disparagement of an attorney.

At one point in the trial, the court told Leander's attorney while the jury was not in the courtroom that a question the attorney had asked of a witness was totally inappropriate. This could not have prejudiced the defendants with the jury because the jury was not in the courtroom.

During the cross-examination of Jermaine Artis, the following colloquy occurred:

Q. What is Elnora's house, a transportation point or something?

A. No, sir. I wouldn't say that.

Q. Everybody gets a ride from there, don't they?

THE COURT: Mr. Harvey, don't—don't—just ask the question. Don't editorialize.

The question asked of the witness was argumentative. The court did not err in this admonition to Leander's attorney.

Later in the cross-examination of Jermaine Artis, he testified he did not know how many people had been in Elnora Lynch's house at a certain time. The following colloquy then occurred:

Q. Um-hum. Who was staying there then?

A. I don't know who stays in her house, sir, right now.

Q. Then. Back then? You knew who was staying there then.

THE COURT: He said he didn't know.

Q. Did you know who was staying there last year in September when you had the little incident with the phone?

A. No, sir, I doesn't [sic].

The court in this exchange did not express any opinion on the truthfulness of the witness, but merely reminded the attorney of the witness' testimony. This was not error. *State v. Paige*, 316 N.C. 630, 343 S.E.2d 848 (1986).

At another point during the cross-examination of Jermaine Artis, he was asked whom he had seen in the crowd of fifty people who were standing in the parking lot after the shooting. The court then asked Leander's attorney whether he wanted the name of each person the witness recognized in the parking lot. This was not a comment on the evidence or a disparaging remark about Leander's attorney. It was an attempt by the court to clarify the question.

The court also stopped Leander's attorney from asking a witness how many people were in the parking lot after Bryan Handsome had been shot. The question had been asked in different forms several times. It was not error to exclude this repetitious question.

At one time during the cross-examination of a witness, the court, at the request of the district attorney, instructed the jury that questions asked by an attorney are not evidence. This ruling came after Leander's attorney had asked questions which implied that someone other than Bennie Lee Taylor had shot Bryan Handsome. The court's instruction was a correct statement of the law, and it was not error to give it.

At one point, the court said, "I'm going to allow the Court's motion—I mean, the State's motion in limine." Leander says this was a Freudian slip which showed the court's bias. We believe it was a *lapsus linguae*, which was not prejudicial to the defendants.

During the cross-examination of Elnora Lynch, she was asked several questions as to the chairs she had on her front porch. When she was asked how long she had had the chairs, the court on its own motion excluded the question. The number of chairs owned by Ms. Lynch had no relevance to any issue in this case. The court did not err in excluding this question.

Several times when ruling on the evidence, the court said "sustained[,] sustained" rather than using the word "sustained" only once.

The defendants say this put too much emphasis on the objections. We do not believe this emphasized the objections, and we do not see how the defendants were prejudiced by this action of the court.

The defendants cite several instances in which the prosecuting attorney objected to questions and said, "That's not what he said." The defendants contend that when the court sustained these objections, it expressed an opinion on the testimony. The sustaining of an objection does not indicate that the court agrees with a statement made in connection with the objection.

Bennie Lee Taylor also complains of what he contends was the court's sustaining objections to questions on its own motion. All three instances cited by Bennie Lee involved questions to prospective jurors during the jury selection. One of the prospective jurors was asked if his years of training were helpful in being an engineer. He was also asked if his wife supervised other people. The court told the prospective juror he did not have to answer either of the questions. On another occasion, the court told Leander's attorney to rephrase a question in order for a prospective juror to understand it. This action of the court did not show, as argued by Bennie Lee Taylor, that the court had abandoned its position of neutrality.

The assignment of error of each defendant is overruled.

[2] The defendants next assign error to what they contend was prosecutorial misconduct. To support this assignment of error, they rely principally on what they say were improper comments on the defendants' failure to testify. The prosecuting attorney argued on several points that the State's case was uncontradicted. The defendants concede that such an argument is ordinarily not an improper comment on a defendant's failure to testify. *State v. Young,* 317 N.C. 396, 415, 346 S.E.2d 626, 637 (1986). They say that with the other prosecutorial misconduct, this argument gave the jury a substantial reason to wonder why they did not testify. We can find no other prosecutorial misconduct. We find no error in this argument by the district attorney.

The prosecuting attorney argued on several points that the defendants had not proved what they said they would prove in their opening statements. We held in *State v. Harris,* 338 N.C. 211, 229, 449 S.E.2d 462, 471 (1994), that such a comment is proper when the defendant does not testify.

The prosecuting attorney also argued that there were certain witnesses the defendants could have called whom they did not. This

argument was not a comment on the defendants' failure to testify. It dealt with witnesses other than the defendants.

The prosecuting attorney argued further that all Leander would ever be is a bully who tried to "keep folks down." Leander says this put his character in evidence. The State may argue from the evidence that a defendant has a bad character without violating the rule of N.C.G.S. § 8C-1, Rule 404(a), that character evidence is not admissible to show the defendant acted in conformity therewith.

At one point in his jury argument, the prosecuting attorney said:

[T]he Lord Himself could not have gotten on the witness stand and not have something bad asked about him. Jesus Christ couldn't have gotten on that witness stand and not had something bad, slandered, about him.

The defendants say this argument is that they would disparage the Father and the Son if given the chance, which could be very damaging to them. No objection to this argument was made at trial. It was not so grossly improper that the court should have intervened *ex mero motu. State v. King*, 299 N.C. 707, 713, 264 S.E.2d 40, 44 (1980).

Finally under this assignment of error, Leander Taylor argues that it was error for the prosecuting attorney to ask a police officer whether he had heard Bennie Lee's attorney say in his opening statement that Bennie Lee "wasn't there." The court sustained the objection to this question. The defendants were not prejudiced. *State v. Quick*, 329 N.C. 1, 29, 405 S.E.2d 179, 196 (1991).

The assignment of error of each defendant is overruled.

[3] In their third assignment of error, each defendant says error was committed when evidence of the character of the victim and the defendants was introduced. Marvin Handsome, Bryan Handsome's uncle, testified that the victim was a "good nephew," that he worked hard, and that he did not use drugs. We note that this testimony was elicited on redirect examination in response to questions asked on cross-examination.

The defendants had asked a State's witness on cross-examination if he knew what type of person the victim was. In response to this question, the State, on redirect, asked Mr. Handsome what type person the victim was. The witness responded as shown above. The defendants cross-examined another witness concerning all of the "nice things" the victim owned in an attempt to imply that he had got-

STATE v. TAYLOR

[344 N.C. 31 (1996)]

ten these things through questionable means. The State properly elicited testimony on redirect examination that the victim was employed and worked hard to get his "nice things." Finally, the defendants attempted to imply on cross-examination of other witnesses that the victim was a gang member and that he hung around a drug house. Therefore, the State presented evidence that the victim did not use drugs. The State, during redirect examination, is entitled to clarify and rebut issues raised during cross-examination. *Id.* at 26, 405 S.E.2d at 194; *State v. Weeks,* 322 N.C. 152, 169, 367 S.E.2d 895, 905 (1988). This testimony is not inadmissible evidence of the victim's good character.

[4] The defendants say it was improper to allow testimony about defendant Bennie Lee Taylor as follows:

> He [Bennie Lee Taylor] sometimes he keeps himself a little neater than "Shorty" [Leander Taylor]. "Shorty's" always been the ragged one. You know, I'm not trying to be a clown or nothing, but that's my opinion about it.

Testimony that Bennie Lee Taylor was neater than his brother is not prejudicial to either. The testimony was merely the witness' description of how the two brothers looked and how he distinguished between them. It was not character evidence.

[5] The defendants also contend that the court erred in failing to strike testimony that "they will shoot you." The defendants objected to the testimony, and the trial court sustained the objection. The defendants did not request that the testimony be struck. They have, therefore, waived their right to assert error. *State v. Barton,* 335 N.C. 696, 709-10, 441 S.E.2d 295, 302 (1994).

The assignment of error of each defendant is overruled.

[6] At the close of all the evidence, the defendants moved to dismiss the charges of first-degree murder because, they contended, the evidence did not support the element of premeditation and deliberation. They now argue that the trial court erred in denying their motions to dismiss and to set aside the verdict. The defendants rely on *State v. Misenheimer,* 304 N.C. 108, 282 S.E.2d 791 (1981), and assert that the killing took place during a quarrel or scuffle while the defendants were under the influence or provocation of the quarrel or scuffle. Therefore, say the defendants, there was no premeditation and deliberation.

STATE v. TAYLOR

[344 N.C. 31 (1996)]

When deciding a motion to dismiss, the trial court must consider the evidence in the light most favorable to the State. *State v. Carter,* 335 N.C. 422, 429, 440 S.E.2d 268, 271 (1994).

> "Premeditation" means that the defendant formed the specific intent to kill " 'for some length of time, however short,' " before committing the murderous act. *State v. Joyner,* 329 N.C. 211, 215, 404 S.E.2d 653, 655 (1991) (quoting *State v. Biggs,* 292 N.C. 328, 337, 233 S.E.2d 512, 517 (1977)); *see also Carter,* 335 N.C. at 429, 440 S.E.2d at 272. "Deliberation" is defined as an intent to kill formed by defendant in a cool state of blood, and not as a result of a violent passion arising from legally sufficient provocation. *Carter,* 335 N.C. at 429, 440 S.E.2d at 272; *[State v.] McAvoy,* 331 N.C. [583,] 589, 417 S.E.2d [489,] 494 [(1992)].

*State v. Ross,* 338 N.C. 280, 287, 449 S.E.2d 556, 562 (1994). The instant case clearly supports the elements of premeditation and deliberation. The State's evidence showed that defendant Leander Taylor had threatened the victim weeks prior to the murder. He told numerous people that he was going to kill the victim. Before the fight even began, Leander stated to the victim and his friends, "We're going to show y'all little young punks something tonight." He then stated to his brother, Bennie Lee, "Shoot him, Bro. Shoot him." Bennie Lee pulled his revolver from his pocket before the scuffle began. He pointed it first at Jermaine Artis, then at the victim, Bryan Handsome, as Leander grabbed and punched him. Bennie Lee fired three successive shots, all of which hit the victim. The victim had said nothing to anger the defendants.

Premeditation and deliberation may easily be inferred from this evidence. Defendant Leander Taylor threatened the life of the victim numerous times prior to the "scuffle." Also, this Court has previously found that, in the case of numerous wounds, "the defendant has the opportunity to premeditate and deliberate from one shot to the next." *State v. Austin,* 320 N.C. 276, 295, 357 S.E.2d 641, 653, *cert. denied,* 484 U.S. 916, 98 L. Ed. 2d 224 (1987). The defendants did not form the intent to kill simultaneously with the act of killing as required by *Misenheimer* to negate premeditation and deliberation. In the present case, there was evidence that the intent to kill was formed prior to the scuffle. As we noted in *Misenheimer,* "a killing committed during the course of a quarrel or scuffle may yet constitute first degree murder provided the defendant formed the intent to kill in a cool state of blood before the quarrel or scuffle began and the killing dur-

ing the quarrel was the product of this earlier formed intent." *Misenheimer*, 304 N.C. at 114, 282 S.E.2d at 795.

The evidence supports the jury's finding of premeditation and deliberation; the trial court did not abuse its discretion in denying the defendants' motions. These assignments of error are overruled.

[7] In their next assignments of error, the defendants contend the court should not have charged on aiding and abetting and acting in concert as to Leander. The court did not charge on either theory as to Bennie Lee, but he says it was error prejudicial to him when the court charged on these elements as to Leander. He says that there was no evidence that he premeditated or deliberated the killing of Bryan Handsome, and by charging on acting in concert as to Leander, the jury was allowed to impute the premeditation and deliberation of Leander to him.

We disagree with Bennie Lee. We have held there is plenary evidence for the jury to find he killed the victim with premeditation and deliberation.

Leander argues that it was error to charge on aiding and abetting. He says he is either guilty as a principal or not guilty. The evidence that Leander was struggling with Bryan Handsome and told Bennie Lee to shoot him is evidence that Leander was present at the time and place and that he encouraged Bennie Lee to commit the crime. This evidence supports a charge on aiding and abetting. *State v. Hargett*, 255 N.C. 412, 415, 121 S.E.2d 589, 592 (1961).

The assignment of error of each defendant is overruled.

[8] Each defendant next argues what they say are several errors in the admission of evidence. A police officer was allowed to testify that Jermaine Artis had told him that Bennie Lee had shot Artis' friend. The defendants contend this was inadmissible hearsay testimony. Leander also contends the testimony violated the rule of *Bruton v. United States*, 391 U.S. 123, 20 L. Ed. 2d 476 (1968).

The testimony was properly admitted to corroborate the testimony of Jermaine Artis, who had testified Bennie Lee had shot Bryan Handsome. The defendants did not ask for a limiting instruction, and they cannot now complain. *State v. Jones*, 322 N.C. 406, 414, 368 S.E.2d 844, 848 (1988). *Bruton* deals with the introduction of out-of-court statements of codefendants. Artis is not a codefendant; thus, *Bruton* does not apply.

**[9]** The defendants next argue that certain testimony of Elnora Lynch should have been excluded as inadmissible hearsay. She testified that at some time prior to the shooting, she saw Leander Taylor across the street from her home and in the yard of her daughter, Velma Lynch. Leander was holding a sawed-off shotgun. Elnora called Velma, who came to Elnora's home. Elnora warned her that she had seen Leander with a gun. Elnora then testified that Velma said, "He's not after me. He's after Bryan and Jermaine."

This testimony by Elnora Lynch as to what her daughter told her was admissible as a present-sense impression exception to the hearsay rule. N.C.G.S. § 8C-1, Rule 803(1) (1992). It was a statement explaining a condition made immediately after the declarant had perceived the condition. *State v. Maness*, 321 N.C. 454, 458, 364 S.E.2d 349, 351 (1988). It was admissible as an exception to the hearsay rule.

**[10]** The next testimony to which the defendants object involves a telephone conversation between Bryan Handsome's mother and grandmother. The mother testified that the grandmother said the following:

> She told me that I needed to talk to Bryan because Elnora had called her and told her something about somebody had hung the phone up on Bryan at the phone booth, and had been around there looking for Bryan with a gun.

Assuming this testimony should have been excluded pursuant to the hearsay rule, its admission was harmless. There was substantial other evidence of the incident at the telephone booth and that Leander had threatened Bryan on several occasions. This evidence was cumulative, and its admission could not have prejudiced the defendants.

**[11]** The defendants next contend that testimony by Deputy Sheriff M.T. Macon violated the hearsay rule. Deputy Sheriff Macon testified that he went to the emergency room of Halifax Memorial Hospital after the shooting. While he was there, Jermaine Artis approached him and said Bennie Lee had been fighting with Bryan. Artis testified at length about the fight. This testimony by Deputy Sheriff Macon was admissible to corroborate Artis' testimony at trial.

**[12]** The defendants next contend that the hearsay rule was violated when Raymond R. Vaughn, Chief of Police of Garysburg, was testifying. Chief Vaughn testified that the Sheriff of Northampton County

asked him if he knew a male living in Garysburg named Pluck, who may have been involved in a shooting. Pluck is Bennie Lee's nickname.

Again, assuming this was hearsay testimony, it was of slight importance. There was other strong evidence of the defendants' guilt. This statement by the chief that Bennie Lee may have been involved in a shooting added virtually nothing to the evidence against the defendants.

[13] The defendants next say it was error to allow the State to introduce the notes an officer made of interviews with several of the witnesses. These notes were consistent with the witnesses' testimony and were introduced to corroborate the testimony of the witnesses. In this state, we have been liberal in allowing the introduction of prior consistent statements in corroboration of witnesses. *See* 1 Kenneth S. Broun, *Brandis and Broun on North Carolina Evidence* § 165 (4th ed. 1993). There is no reason under this liberal policy why notes taken of conversations should not be allowed to corroborate the testimony of witnesses.

[14]  Defendant Leander Taylor also says it was error to let an officer testify that when Bennie Lee was advised about the shooting, he said "he didn't know anything about it, that he had been home all night." Leander says this statement by the officer as to what his codefendant said violated the *Bruton* rule. The *Bruton* rule prohibits the introduction into evidence of a statement by a defendant if the statement implicates a codefendant. The testimony of the officer as to what Bennie Lee had said did not implicate Leander in any way.

The assignment of error of each defendant is overruled.

[15] The defendants next assign error to the introduction into evidence of a picture of Bryan Handsome which the pathologist testified appeared to be a picture of the person upon whose body she performed an autopsy. The defendants contend that a chain of custody was not established which would prove that the body on which the autopsy was performed was the body of Bryan Handsome. If an item to be introduced has unique features so it is readily identifiable, no chain of custody evidence is necessary. *State v. Kistle*, 59 N.C. App. 724, 297 S.E.2d 626 (1982), *disc. rev. denied*, 307 N.C. 471, 298 S.E.2d 694 (1983). The pathologist could identify the photograph and testify as to the results of the autopsy without showing a chain of custody.

The assignment of error of each defendant is overruled.

**[16]** The defendants next assign error to the allowing of a motion *in limine* to prevent them from asking any questions on cross-examination of the sheriff as to what one of his deputies had told him. The defendants concede such testimony would be hearsay but say N.C.G.S. § 8C-1, Rules 803 and 804 allow exceptions in this case. The defendants do not say how these two rules allow such testimony, and we can find no way that they do so. It was not error to grant this motion *in limine*.

The assignment of error of each defendant is overruled.

**[17]** The defendants next assign error to the court's granting of a motion *in limine* precluding them from asking a deputy sheriff on cross-examination what someone told him. This would have been hearsay evidence, but the defendants say it should have been admitted because it would show the officer's knowledge as a result of the investigation. We know of no such exception to the hearsay rule. In addition, the record does not show what the deputy sheriff's answer would have been, and we cannot determine whether the defendants were prejudiced by the granting of this motion. *See State v. Kirby*, 276 N.C. 123, 171 S.E.2d 416 (1970).

The assignment of error of each defendant is overruled.

**[18]** The defendants next assign error to the allowance of testimony by two of the State's witnesses. Marvin Handsome, the victim's uncle, testified that he was scared for his nephew and that his nephew was worried. Jermaine Artis testified that the death of his friend had affected his ability to sleep. The defendants argue that these statements were inadmissible under N.C.G.S. § 8C-1, Rule 403 because of the prejudicial impact of the statements.

We first note that the statements by Marvin Handsome were made on redirect in order to clarify questions asked on cross-examination regarding the witness' conversation with Leander Taylor. During redirect examination, the State is entitled to clarify and rebut issues raised during cross-examination. *See Quick*, 329 N.C. at 26, 405 S.E.2d at 194; *Weeks*, 322 N.C. at 169, 367 S.E.2d at 905. Second, the testimony of Jermaine Artis that he could not sleep was admitted for the limited purpose of explaining his demeanor on the witness stand. The trial court properly instructed the jury as to the limited use of this evidence. Finally, the defendants fail to show prejudice from the admission of these statements. Reasonable jurors would most likely con-

clude without testimony to the fact that the loss of a friend would be difficult for anyone. Similarly, most uncles would be concerned for their nephew when someone threatens him.

The assignment of error of each defendant is overruled.

**[19]** In the defendants' final assignment of error, they contend that the State failed to comply with *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215 (1963), by giving them Officer Blowe's notes during trial instead of before trial. They argue that this failure entitled them to a mistrial and that it was error not to grant it.

We have previously held that due process and *Brady* are satisfied by the disclosure of the evidence at trial, so long as disclosure is made in time for the defendants to make effective use of the evidence. *State v. Jackson*, 309 N.C. 26, 33, 305 S.E.2d 703, 710 (1983). In the present case, the State provided the defendants with Officer Blowe's notes on Thursday, four days before the State rested on Monday. The State also provided the defendants with telephone numbers by which the defendants could contact the witness. The defendants did not ask for a continuance or in any way indicate that they were having trouble locating the witness. Based on these facts, we find that the defendants were given ample opportunity to make use of this evidence, if they desired to do so.

The assignment of error of each defendant is overruled.

**[20]** Defendant Leander Taylor raises an additional assignment of error. He contends that the trial court erred in admitting evidence of a fight between the victim, Bryan Handsome, and Leander Taylor's cousin as furnishing a motive for the shooting. We note that evidence of motive is relevant and competent. *State v. Ruof*, 296 N.C. 623, 630, 252 S.E.2d 720, 725 (1979). This evidence was properly admitted.

This assignment of error is overruled.

NO ERROR.