STATE OF NORTH CAROLINA v. ERNEST JAWERN WRIGHT

No. COA10-854

(Filed 1 March 2011)

### 1. Evidence— testimony—results of blood tests—no misrepresentation of results—no error

The trial court did not commit error or plain error in a multiple assault case by admitting a State Bureau of Investigation (SBI) agent's testimony or a prosecutor's comments regarding the results of SBI Crime Laboratory blood tests. Neither the agent's testimony nor the prosecutor's comments misrepresented the results of the tests.

### 2. Constitutional Law— State testing of material evidence—evidence made available to defendant for testing—denial of motion to continue—no error

Defendant's argument that he was entitled to a new trial because the State Bureau of Investigation Crime Lab refused to test material evidence in violation of the Sixth and Fourteenth Amendments was overruled. Police do not have a constitutional duty to perform any particular tests on crime scene evidence and the evidence at issue was made available to defendant for independent testing. The trial court did not err by denying defendant's motion to continue to test the evidence where defendant had six months to prepare for trial and to obtain independent testing, but waited until the morning trial was scheduled to begin to file his motion.

### 3. Evidence— bad character—no abuse of discretion—no plain error

The trial court did not err in an assault case by admitting evidence of defendant's bad character. Where the evidence was objected to at trial, there was no abuse of discretion in the trial court's admitting the testimony for corroborative purposes only. Furthermore, even assuming *arguendo* that the trial court erred in admitting the testimony that was not objected to at trial, defendant failed to show that a different result probably would have been reached absent the error.

**4. Evidence— hearsay—no plain error**

The trial court did not commit plain error in an assault case by admitting hearsay evidence which the prosecutor subsequently argued in closing argument. Defendant failed to show that a different result probably would have been reached had the evidence not been admitted.

**5. Assault— secret assault—insufficient evidence—motion to dismiss improperly denied**

**6. Assault— lesser-included offenses not submitted—no error**

The trial court did not commit plain error in a multiple assault case by failing to submit lesser-included offenses to the jury. Evidence of defendant's intent to kill was sufficient to support the assault with a deadly weapon with intent to kill inflicting serious injury charge and evidence of the victim's serious injury was sufficient to support the assault with a deadly weapon inflicting serious injury charge.

**7. Sentencing— out-of-state convictions—no evidence of substantial similarity—erroneous assignment of points**

The trial court erred in an assault case in its classification and assignment of points to two out-of-state convictions. The State did not produce any evidence that defendant's two prior out-of-state convictions were substantially similar to any North Carolina offenses, and the trial court did not make any substantial similarity conclusions.

**8. Appeal and Error—preservation of issues—constitutional issue—not raised at trial**

Defendant's argument that at least one of his four convictions in a multiple assault case must be arrested because entry of judgment on all four violated due process was dismissed. Defendant failed to raise the constitutional issue at trial and, thus, failed to preserve the issue for appellate review.

Appeal by defendant from judgments entered 11 November 2009 by Judge James F. Ammons, Jr., in Bladen County Superior Court. Heard in the Court of Appeals 24 January 2010.

*Roy Cooper, Attorney General, by Robert C. Montgomery, Special Deputy Attorney General, for the State.*

*Staples Hughes, Appellate Defender, by Daniel R. Pollitt, Assistant Appellate Defender, for defendant.*

THIGPEN, Judge.

Defendant Ernest Wright appeals from six convictions arising from the assault of Steven Locklear and Demetrius Jacobs in Ms. Jacobs' mobile home. Four principal issues are presented on appeal: (1) whether there is sufficient evidence to support the secret manner element for the charge of secret assault of Mr. Locklear; (2) whether the trial court's classification and assignment of points to two out-of-state convictions violated N. C. Gen. Stat. § 15A-1340.14(e); (3) whether SBI Agent Jodie West overstated, and the State misrepresented, the results of the SBI Crime Lab blood tests; and (4) whether the trial court erred by admitting the State's bad character evidence and argument against Defendant. Defendant also contends the trial court erred by denying his motion to continue, admitting inadmissible evidence, and failing to submit lesser included offenses to the jury.

Since we find there is insufficient evidence to support the secret manner element of secret assault, we vacate Defendant's conviction for secret assault of Mr. Locklear. Additionally, we remand for resentencing because the State failed to demonstrate the substantial similarity of Defendant's out-of-state convictions to North Carolina crimes, and the trial court failed to make a substantial similarity determination. For all other issues, we find no error.

At trial, the State's evidence tended to show that in the early morning hours of 28 December 2005, Ms. Jacobs and her boyfriend, Mr. Locklear, were assaulted inside Ms. Jacobs' rented mobile home. The mobile home was located in the rear of Eddie Pittman's property in Bladen County, and Ms. Jacobs began renting it from Mr. Pittman in September 2005. After Ms. Jacobs and her children moved into the mobile home, Mr. Pittman developed a romantic interest in Ms. Jacobs. Ms. Jacobs, however, did not reciprocate Mr. Pittman's romantic interest, and she began a romantic relationship with Mr. Locklear in November 2005. Mr. Locklear subsequently moved in with Ms. Jacobs. Mr. Pittman did not like Mr. Locklear living with Ms. Jacobs. Mr. Pittman began harassing Ms. Jacobs with letters and phone calls about Mr. Locklear, asked Ms. Jacobs to put Mr. Locklear out, turned off the water to the mobile home, started eviction pro-

ceedings against Ms. Jacobs, and had Mr. Locklear arrested for trespassing. Ms. Jacobs and Mr. Locklear decided to move out on 31 December 2005.

On the night of 27 December 2005, Ms. Jacobs and Mr. Locklear went to sleep in the bedroom of the mobile home at about 12:30 a.m. The only light on in the home was a Christmas tree in the living room. Ms. Jacobs testified she awoke in the middle of the night when she felt a "hit" on her shoulder and another "hit" on her knee. She screamed and looked up to see someone standing in the doorway of the bedroom with a bat or pipe in his hand. Mr. Locklear testified he heard Ms. Jacobs scream, looked to see someone standing in the doorway, jumped on him, and hit him with a chair. Ms. Jacobs testified Mr. Locklear lunged from the bed toward the man and "pushed him into the kitchen area[,]" where the men began fighting. Ms. Jacobs saw the attacker repeatedly hit Mr. Locklear with the pipe and continue to hit Mr. Locklear on the head after he had collapsed to the floor. Ms. Jacobs grabbed her cell phone and ran out of the trailer to call 911. The assailant ran out of the trailer after Ms. Jacobs and ran toward Mr. Pittman's house. Ms. Jacobs returned to the trailer to find Mr. Locklear covered in blood and "a gray hood with the eyes cut out and the mouth cut out" laying on the floor.

As a result of the 28 December 2005 assault, the right side of Mr. Locklear's skull was crushed and doctors had to insert a steel plate on the right side of his head; he had fractured ribs and an injury to his lung; he lost all of his teeth, except for two on the top; he suffers from seizures and severe headaches; and he receives disability benefits from the government. Ms. Jacobs suffered contusions and several bruises to her knee and had to use crutches for about a week and a half.

Sheriff Deputy Michael Burney testified he received a call at 2:15 a.m. and drove to Ms. Jacobs' mobile home, where investigators seized a cut window screen and a piece of pipe on the ground in the backyard about 25 and 50 feet, respectively, outside the trailer, a gray knit toboggan inside the trailer, and a broken window pane in the spare bedroom. Officers searched, but did not find any trace evidence or fingerprints inside the trailer or footprints inside or outside the trailer.

At the hospital on 28 December 2005, Detective Larry Guyton interviewed Ms. Jacobs and Mr. Locklear. Ms. Jacobs told Detective Guyton about the problems she and Mr. Locklear had been having with Mr. Pittman. Although Ms. Jacobs stated she could not see the attacker's face or otherwise identify him, she told Detective Guyton

that she was sure the attacker was Mr. Pittman. Mr. Locklear also told Detective Guyton that Mr. Pittman was the assailant.

On 6 December 2006, co-defendant Jason Todd pled guilty to several felonies related to the assault on Ms. Jacobs and Mr. Locklear. Mr. Todd testified at Defendant's trial that around 9:00 p.m. on 27 December 2005, Defendant came to Mr. Todd's house driving a Toyota car and asked Mr. Todd to come with him because he was "going to f—— a mother f—— up". After stopping at Defendant's home to play video games for about one hour and a half, Defendant stated he was ready to go and grabbed a toboggan off the kitchen table. Mr. Todd testified Defendant was wearing "a gray fleece pull over shirt . . . like a sweat shirt type deal," "a dark pair of pants," and "some kind of stocking on his head." Mr. Todd and Defendant then got back into the Toyota, and Defendant directed Mr. Todd to drive to Purnell McLean Road. Defendant pointed to a trailer and told Mr. Todd that was the house where the people stayed. Mr. Todd testified Defendant directed him to park on a nearby dirt road. Defendant got out of the car with a piece of pipe and some white gloves and walked away. An hour later, Defendant returned to the car for a screwdriver and walked away again.

Mr. Todd stated that about an hour after Defendant left the car the second time, he heard "banging noises" and a woman screaming for help. Forty-five seconds later Defendant got back in the car covered in blood and told Mr. Todd he had hit two people. Mr. Todd drove to Defendant's house where he collected Defendant's pants and fleece and Defendant told Mr. Todd to get rid of the clothes. As Defendant's wife drove Mr. Todd home, Mr. Todd threw the clothes out the car window onto the side of the road about one half mile from Defendant's house.

Detective Guyton recovered Defendant's fleece pull-over and pants from the side of the road where Mr. Todd had thrown them. Officers also searched Defendant's house, car, and telephone records, but did not find any incriminating evidence, blood, bloody clothing, or a call between Defendant and Mr. Pittman. Officers did find hair on the toboggan hat, and submitted the clothes and toboggan to the SBI Crime Lab for forensic testing.

At trial, forensic serologist Jodie West testified he received the pants, fleece, and toboggan in the SBI Crime Lab and applied the phenolphthalein blood test to them. Mr. West explained the phenolphthalein test is "a[n]indicator test, which means a positive

result of this test would give us an indication that blood could be present." Mr. West testified the pants, fleece pull-over, and toboggan all tested positive. On cross-examination, Mr. West further explained the phenolphthalein test:

Q. That test for the presence of blood?

A. It test[s] for the chemical indications for the presence of blood.

Q. Is there anything that could make that test give a false positive?

A. There are certain plant materials that may give a positive reaction. There is also a couple of commercially produced chemicals that may give a positive reaction. But in my training and experience I have never found these plant materials to give a positive reaction.

Cuttings from the areas that tested positive during the phenolph-thalein tests were forwarded to the DNA unit for further testing.

Special Agent Sharon Hinton, a DNA forensic biologist in the SBI Crime Lab, extracted DNA from Defendant, Mr. Todd, Mr. Pittman, and Mr. Locklear, and from the cuttings of the fleece pull-over, pants, and toboggan worn by the assailant. Agent Hinton testified she found DNA predominantly from Mr. Locklear, with a smaller amount from Defendant, on the cutting from the outside of the toboggan. On the cutting from the nose and mouth area inside the toboggan, she found DNA predominantly from Defendant, with a smaller amount from Mr. Locklear. No DNA from Mr. Todd or Mr. Pittman was found on the toboggan. Agent Hinton did not find DNA on the fleece sweatshirt and was unable to conclusively identify the donor from the partial DNA profile on the pants.

At trial, the jury found Defendant guilty of first-degree burglary, assault with a deadly weapon inflicting serious injury of Ms. Jacobs, assault with a deadly weapon with intent to kill inflicting serious injury of Mr. Locklear, secret assault of Mr. Locklear, attempted first-degree murder of Mr. Locklear, and conspiracy to commit felony of assault inflicting serious bodily injury of Mr. Locklear. The trial court imposed consecutive sentences and sentenced Defendant to a mini-mum of 693 months and a maximum of 880 months imprisonment.

On appeal, Defendant argues (I) Agent West overstated and the State misrepresented the results of the SBI Crime Lab blood tests; (II) the SBI Crime Lab refused to test material evidence and the trial court erred by denying Defendant's motion to continue; (III) the trial

STATE v. WRIGHT

[210 N.C. App. 52 (2011)]

court erroneously admitted the State's bad character evidence and argument; (IV) the trial court erred by admitting the State's inadmissible hearsay evidence and argument; (V) there is insufficient evidence that the assault on Mr. Locklear was committed in a secret manner; (VI) the secret assault indictment does not allege an essential element of secret assault and the trial court lacked jurisdiction; (VII) the trial court erred by failing to submit lesser included offenses to the jury for secret assault, assault with a deadly weapon with intent to kill inflicting serious injury of Mr. Locklear, and assault with a deadly weapon inflicting serious injury of Ms. Jacobs; (VIII) the trial court's classification and assignment of points to two out-of-state convictions violated N.C. Gen. Stat. § 15A-1340.14(e); and (IX) entry of judgment for four convictions for the assault of Mr. Locklear violates due process and *State v. Fulcher.*

I.

**[1]** Defendant first argues he is entitled to a new trial because Agent West overstated and the prosecutor misrepresented the results of the SBI Crime Lab phenolphthalein blood tests. We disagree.

Defendant did not object to Agent West's testimony or the prosecutor's closing statement at trial and now asserts plain error. *See* N.C. R. App. P. 10(a)(4). "Under the plain error standard of review, defendant has the burden of showing: (i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial." *State v. Fraley,* —— N.C. App. ——, ——, 688 S.E.2d 778, 785 (citations and quotation marks omitted), *disc. rev. denied,* 364 N.C. 243, 698 S.E.2d 660 (2010).

Defendant contends Agent West's testimony was inadmissible and improper because Agent West stated Defendant's clothes tested positive for blood, rather than stating that a positive phenolphthalein test result means "chemical indications for the presence of blood." This argument has no merit.

Toward the beginning of his testimony, Agent West explained that "a positive result of this [phenolphthalein] test would give us an indication that blood could be present." On cross-examination, Agent West further explained that the phenolphthalein test "test[s] for the chemical indications for the presence of blood." He then noted that there are "certain plant materials that may give a positive reaction. There is also a couple of commercially produced chemicals that may

give a positive reaction." Based on the record, we conclude Defendant has failed to show either error or plain error.

Defendant also argues he is entitled to a new trial because the prosecutor misrepresented the results of the SBI Crime Lab phenolphthalein blood tests. During closing argument, the prosecutor stated: "What do we know about these clothes? Jodi West tells you that he tested the clothes and they tested positive for blood. They test positive for blood." Because Agent West previously testified about the results and limitations of the phenolphthalein test, we find Defendant has also failed to show error or plain error.

## II.

[2] Defendant next argues he is entitled to a new trial because the SBI Crime Lab refused to test material evidence and because the trial court denied Defendant's motion to continue to test the evidence in violation of the Sixth and Fourteenth Amendments. We disagree.

Although criminal defendants have a right to "inspect, examine, and test any physical evidence or sample" contained in the State's file, N.C. Gen. Stat. § 15A-903(a)(1) (2009), "police do not have a constitutional duty to perform any particular tests on crime scene evidence or to use a particular investigatory tool[.]" *State v. Taylor*, 362 N.C. 514, 525, 669 S.E.2d 239, 253 (2008) (quotation marks and citation omitted), *cert. denied*, —— U.S. ——, 175 L. Ed. 2d 84, 130 S. Ct. 129 (2009).

Defendant contends he is entitled to a new trial because the SBI Crime Lab refused to test four hair and fiber lifts taken from the toboggan.

Here, Lieutenant Larry Guyton examined the toboggan at the police station and found hairs and fibers. He took four lifts using adhesive evidence tape and submitted the lifts to the SBI for testing. Detective Jeff Singletary testified the SBI would not examine both DNA and hair lifts from the toboggan because "[i]f you have DNA, it's better. And they didn't see any sense in examining the hair." Defendant does not argue the prosecutor failed to make the lifts available to him for testing. In fact, the prosecutor noted that one of Defendant's previous attorneys made a motion for independent testing of the toboggan and received the results of the testing. Because police do not have a constitutional duty to perform particular tests on crime scene evidence, *Taylor*, 362 N.C. at 525, 669 S.E.2d at 253, we find no error.

Defendant also contends the trial court erred by denying his motion to continue to test the lifts in violation of the Sixth and Fourteenth Amendments.

"We review a trial court's resolution of a motion to continue for abuse of discretion." *State v. Morgan*, 359 N.C. 131, 143, 604 S.E.2d 886, 894 (2004) (citation omitted). However, "when a motion raises a constitutional issue, the trial court's action upon it involves a question of law which is fully reviewable[.]" *State v. Branch*, 306 N.C. 101, 104, 291 S.E.2d 653, 656 (1982). "The denial of a motion to continue, even when the motion raises a constitutional issue, is grounds for a new trial only upon a showing by the defendant that the denial was erroneous and also that his case was prejudiced as a result of the error." *Id.* In determining whether a trial court erred in denying a motion to continue, we have considered the following factors:

(1) the diligence of the defendant in preparing for trial and requesting the continuance, (2) the detail and effort with which the defendant communicates to the court the expected evidence or testimony, (3) the materiality of the expected evidence to the defendant's case, and (4) the gravity of the harm defendant might suffer as a result of a denial of the continuance.

*State v. Barlowe*, 157 N.C. App. 249, 254, 578 S.E.2d 660, 663 (2003) (citations omitted).

In the instant case, Defendant's attorney filed a motion to continue on 26 October 2009, the day Defendant's trial was scheduled to begin. The motion stated that Defendant's attorney was appointed in March 2009 and had diligently prepared the matter for trial but needed a continuance to test four hairs/fibers removed from the toboggan. Defendant's attorney explained that he didn't discover the hairs until the day before, as he prepared for trial. In response to Defendant's motion to continue, the prosecutor stated the toboggan had been DNA tested and Defendant's and Mr. Locklear's DNA were found on the toboggan, with Defendant's DNA as the predominate profile on the inside and Mr. Locklear's DNA the predominate profile on the outside. The prosecutor also explained that three of Defendant's previous attorneys had reviewed all of the evidence, one attorney made a motion for independent testing of the toboggan but later withdrew the motion, and another attorney made a motion for independent testing of the toboggan and had it tested. Defense counsel did not refute these statements.

Based on the record, we find that the trial court did not err by denying Defendant's motion to continue to test the lifts. Defendant had six months to prepare for trial and to obtain independent testing, but waited until the morning trial was scheduled to begin to file his motion, in violation of N.C. Gen. Stat. § 15A-952(c) which states:

> Unless otherwise provided, the motions listed in subsection (b) must be made at or before the time of arraignment if a written request is filed for arraignment and if arraignment is held prior to the session of court for which the trial is calendared. If arraignment is to be held at the session for which trial is calendared, the motions must be filed on or before five o'clock P.M. on the Wednesday prior to the session when trial of the case begins.

> If a written request for arraignment is not filed, then any motion listed in subsection (b) of this section must be filed not later than 21 days from the date of the return of the bill of indictment as a true bill.

Defendant's failure to file the motion to continue within the required time period constitutes a waiver of the motion. N.C. Gen. Stat. § 15A-952(e); *see also Branch*, 306 N.C. at 104, 291 S.E.2d at 656 ("This rule requiring the defendant to make a showing of abuse by the trial court in denying his motion for a continuance should be applied with even greater vigor in cases such as this in which the defendant has waived his right to make a motion to continue by failing to file the motion within the time prescribed by G.S. 15A-952."). Furthermore, because the toboggan had already been DNA tested by the State, the lifts were not the only physical evidence taken from the toboggan. *Compare Barlowe*, 157 N.C. App. at 257, 578 S.E.2d at 665 (holding the trial court erred by denying the motion to continue to evaluate blood spatter analysis and present contradictory evidence when "blood spatter evidence was critical to the State's case against defendant because it was the only physical evidence potentially placing her at the scene"). Accordingly, we find the trial court did not abuse its discretion by denying Defendant's motion to continue.

III.

[3] Defendant next argues he is entitled to a new trial because the trial court erred by admitting the State's bad character evidence and argument. Specifically, Defendant challenges the testimony of Detective Guyton regarding a breaking and entering at a local farm, and the testimony of John Phillips and Kevin White, who were both inmates with Defendant in the Bladen County Jail. We disagree.

Defendant challenges twelve statements from the above witnesses. At trial, however, he objected only to Detective Guyton's testimony. Under N.C. Gen. Stat. § 8C-1, Rule 403 (2009), relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. "Whether or not to exclude evidence under Rule 403 of the Rules of Evidence is a matter within the sound discretion of the trial court and its decision will not be disturbed on appeal absent a showing of an abuse of discretion." *State v. Lawson*, 194 N.C. App. 267, 276, 669 S.E.2d 768, 774 (2008) (citation omitted), *disc. rev. denied*, 363 N.C. 378, 679 S.E.2d 837 (2009). "The trial court's ruling should not be overturned on appeal unless the ruling was manifestly unsupported by reason or was so arbitrary that it could not have been the result of a reasoned decision." *Id.* (quotation marks and citation omitted). Where a defendant has failed to object, he "has the burden of showing that the error constituted plain error, that is, (i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial." *State v. Bishop*, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997) (citations omitted).

In the present case, defense counsel objected to Detective Guyton's testimony about a breaking and entering at a local farm. During *voir dire*, the prosecutor explained Detective Guyton's testimony would corroborate Mr. Phillip's testimony that Defendant told him about breaking into a farm with Mr. Todd. The trial court limited Detective Guyton's testimony to the occurrence of the breaking and entering. Based on the record, we cannot conclude the trial court's ruling regarding Detective Guyton's testimony was "manifestly unsupported by reason" or "so arbitrary that it could not have been the result of a reasoned decision." *Lawson*, 194 N.C. App. at 276, 669 S.E.2d at 774. Thus, we find no abuse of discretion.

Defendant also challenges the following statements made by Mr. Phillips and Mr. White: Defendant had killed two people in New York; killed his first wife; had been convicted of murder in New York; done jail and prison time; broke and entered a local farm in January 2006; stole and fenced property from the break-in; beat, assaulted, and bullied other inmates in jail; threatened to harm jail inmates and their relatives; smuggled marijuana into jail; "broke out" of jail; "escaped" from jail, and was "pretty good at the ability to kill." Assuming *arguendo* that the trial court erred in admitting Mr. Phillips' and Mr. White's testimony, we conclude Defendant has failed to show plain error. The evidence against Defendant was substantial. Mr. Todd

testified in detail about the assaults against Mr. Locklear and Ms. Jacobs; Agent Hinton testified that Defendant's DNA was on the toboggan; Mr. West testified to the positive results of the phenolph-thalein test of Defendant's clothes; and Mr. Phillips and Mr. White testified that Defendant told them about the assault on Mr. Locklear and Ms. Jacobs. Under these circumstances a different result probably would not have been reached absent Mr. Phillips' and Mr. White's statements, nor did the statements deprive Defendant of a fair trial.

## IV.

[4] Defendant next contends he is entitled to a new trial in all cases because the trial court erroneously admitted Timothy Outlaw's hearsay evidence about what Mr. Pittman told him in December 2005 and the prosecutor subsequently argued that evidence in closing argument. We disagree.

Where, as in this case, the defendant has failed to object, he "has the burden of showing that the error constituted plain error, that is, (i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial." *Bishop,* 346 N.C. at 385, 488 S.E.2d at 779.

Here, Mr. Outlaw testified he knew both Mr. Pittman and Defendant. He then stated as follows:

Q. Eddie Pittman approached you wanting to meet Ernest Wright?

A. Yes, sir.

Q. Did Eddie Pittman tell you why he wanted to meet Ernest Wright?

A. Yes, sir.

COURT: Is Mr. Pittman going to testify?

MR. BOLLINGER: Judge, we wouldn't be offering it for corrobo-rative purposes at this point. That decision has not been made yet. We would not be offering it for the truth of the matter asserted, but to explain subsequent actions of this particular witness.

COURT: The witness may answer the question. Ladies and gentlemen, you may consider his answer only for the purpose of corroborating the testimony which is going to be given to you by

the witness, Eddie Pittman. Any portion of this statement that does not tend to corroborate his testimony at this trial, you will disregard that portion of the statement completely and not consider it any way in reaching a verdict. You may not consider the responses of this witness as substantive evidence.

Q. Did Mr. Pittman indicate to you why he wanted to meet Ernest Wright?

A. Yes, sir.

Q. What did he tell you?

A. He wanted a guy, I didn't know his name, scared off from his girlfriend is what he told me.

Q. Did he tell you where those individuals lived that he wanted scared off?

A. Yes, sir. The lady rented a trailer from him.

Defendant's attorney did not object to Mr. Outlaw's testimony regarding his conversation with Mr. Pittman and did not request the limiting instruction from the trial court.

At the close of all the evidence, Defendant's attorney noted that Mr. Pittman did not testify and Mr. Outlaw's statement as to what Mr. Pittman told him about why he wanted to hire Defendant was introduced solely for corroboration. Therefore, Defendant's attorney asked the Court to instruct the State not to use that evidence in their closing argument. The trial court sustained the objection, allowing the prosecution to say Mr. Outlaw introduced Mr. Pittman to Defendant, but not why they were introduced. In closing argument, the prosecution stated: "DNA tells you that you can believe Timmy Outlaw when he comes in here, I was the one that introduced Eddie Pittman to Ernest Wright because he wanted to have some people scared off." Defendant did not object.

Based on the record, we find Defendant has failed to show plain error. Contrary to Defendant's argument, there was other evidence that Mr. Pittman hired Defendant to assault Ms. Jacobs and Mr. Locklear. Mr. Todd testified Defendant told him that he was supposed to be paid $500, but couldn't get any money because they locked Mr. Pittman up. Mr. Outlaw testified Defendant told him "I need to get in touch with [Mr. Pittman]. I need the rest of my money. . . . I done a job and I don't know if the boy is going to live." Accordingly, we cannot

conclude that a different result probably would have been reached absent Mr. Outlaw's statement about why Mr. Pittman wanted to meet Defendant or the prosecutor's statement in closing argument. Nor can we conclude that the statements deprived Defendant of a fair trial.

## V.

[5] Defendant next argues his conviction for secret assault on Mr. Locklear must be vacated because there is insufficient evidence that the assault was committed in a secret manner. We agree.

At the close of the State's evidence, Defendant's attorney made a motion to dismiss the secret assault charge because the State failed to show a secret assault. The trial court denied the motion. "The motion to dismiss must be allowed unless there is substantial evidence of each element of the crime charged. . . . Substantial evidence is evidence from which any rational trier of fact could find the fact to be proved beyond a reasonable doubt." *State v. McDowell,* 329 N.C. 363, 389, 407 S.E.2d 200, 214-15 (1991) (quotation marks and citations omitted).

Defendant was indicted for secret assault under N.C. Gen. Stat. § 14-31:

> If any person shall in a secret manner maliciously commit an assault and battery with any deadly weapon upon another by waylaying or otherwise, with intent to kill such other person, notwithstanding the person so assaulted may have been conscious of the presence of his adversary, he shall be punished as a Class E felon.

"Under this statute, the State must prove that the defendant (1) acted in a secret manner, (2) with malice, (3) perpetrated an assault and battery, (4) with a deadly weapon, and (5) with intent to kill." *State v. Green,* 101 N.C. App. 317, 321, 399 S.E.2d 376, 378 (1991) (citing *State v. Hill,* 287 N.C. 207, 216-17, 214 S.E.2d 67, 74 (1975)). "[T]he purpose of the secret assault statute is to provide for the protection of society in cases of assault from ambush[.]" *State v. Joyner,* 329 N.C. 211, 217, 404 S.E.2d 653, 657 (1991).

We recently summarized North Carolina law on the element of secret manner:

> The body of case law that addresses the secret manner element of malicious secret assault reinforces that, if the victim is unaware of the defendant's presence, then the assault is a secret

one, because if one's presence is unknown, then his purpose to assault necessarily also is unknown. If a defendant's presence is known but the purpose underlying the assault is not, our courts have held that that also satisfies the secret manner element. . . . [R]egardless of whether the victim is aware of the defendant's presence, he cannot know of the defendant's purpose to assault him in order for the assault to be committed in a secret manner.

We previously have noted that in the context of an assault case, lying in wait or secret manner is nothing more or less than taking the victim by surprise. Although concealment is not a necessary element it is clear from this Court's prior decisions that some sort of ambush and surprise of the victim are required. Even a moment's deliberate pause before assaulting one unaware of the impending assault and consequently without opportunity to defend himself satisfies the definition. *Important considerations for the secret manner element center on the suddenness of the attack and the inability of the victim to defend himself.*

*State v. Holcombe*, —— N.C. App. ——, ——, 691 S.E.2d 740, 744 (2010) (quotation marks and internal citations omitted) (emphasis added). We also outlined similarities in many of the cases in which the secret manner or lying in wait element was challenged and the State's evidence found sufficient:

For most of the victims, their first awareness of potential danger occurred simultaneously with the assaults themselves. Also, most of the defendants were concealed and waiting for their victims prior to the victims' arrival at the scene. Finally, each defendant took some deliberate action to disguise either his presence or his purpose from the victim. *All of these factors indicate that the victims were taken by surprise and were unable to defend themselves from the assaults.*

*Id.* at ——, 691 S.E.2d at 745 (emphasis added).

Here, Mr. Locklear testified he heard a loud, thunderous noise, heard Ms. Jacobs scream, and looked up to see someone standing in the bedroom doorway. The only light in the house was from the Christmas tree in the living room. Mr. Locklear did not know who was standing in the doorway and could not see his face because it was covered. Mr. Locklear stated he jumped on the man and hit him with a chair, but did not remember anything else. Similarly, Ms. Jacobs testified Mr. Locklear lunged from the bed toward the man and "pushed him into the kitchen area[,]" where the men began fighting.

The evidence shows Mr. Locklear was aware of Defendant's presence and purpose before the assault began. *See id.* at ——, 691 S.E.2d at 745-46 (vacating defendant's conviction for malicious secret assault where the victims "were aware of both the presence and the purpose of defendants in time to defend themselves by escaping and prior to any assault"). Mr. Locklear awoke to a loud noise and Ms. Jacobs' scream and saw Defendant standing in the doorway of the bedroom with his face covered. At this point, Mr. Locklear was aware of the potential danger. *Compare id.* at ——, 691 S.E.2d at 744 ("For most of the victims, their first awareness of potential danger occurred simultaneously with the assaults themselves."); *Green,* 101 N.C. App. at 321, 399 S.E.2d at 379 (finding sufficient evidence of secret manner where the victim observed defendant running into the woods, but did not know what defendant was doing or why defendant wanted to shoot him).

Although Defendant concealed his face and broke into the trailer in the middle of the night, Mr. Locklear was able to defend himself by jumping on and attacking Defendant before Defendant assaulted him. *See Holcombe,* —— N.C. App. at ——, 691 S.E.2d at 744 ("Important considerations for the secret manner element center on the suddenness of the attack and the inability of the victim to defend himself.") (citations omitted); *compare State v. Leroux,* 326 N.C. 368, 377, 390 S.E.2d 314, 321 (1990) (concluding the evidence was sufficient to convince a rational jury beyond a reasonable doubt that defendant was guilty of lying in wait where defendant was "sneaking around the dark golf course and, with a suddenness which deprived Officer Smith of all opportunity to defend himself, fired upon and killed the · officer"). Because the State did not produce substantial evidence as to the element of secret manner, we find the trial court erred by denying Defendant's motion to dismiss. Accordingly, we vacate Defendant's conviction for secret assault of Mr. Locklear.[1]

VI.

[6] Defendant next contends he is entitled to a new trial because the trial court erred by failing to submit lesser included offenses to the jury. Specifically, Defendant argues the trial court failed to submit (1)

---

1. Because we vacate Defendant's conviction for secret assault of Mr. Locklear, we will not address Defendant's arguments that the secret assault conviction must be vacated because the indictment does not allege the essential element of battery or that he is entitled to a new trial for secret assault because the trial court erred by failing to submit two lesser included offenses to the jury.

STATE v. WRIGHT

[210 N.C. App. 52 (2011)]

the lesser included offense of assault with a deadly weapon inflicting serious injury for the charge of assault with a deadly weapon with intent to kill inflicting serious injury of Mr. Locklear; and (2) the lesser included offense of assault with a deadly weapon for the charge of assault with a deadly weapon inflicting serious injury of Ms. Jacobs. We disagree.

Since Defendant failed to object to the jury charge or any omission thereto, our review is limited to plain error. *State v. Odom*, 307 N.C 655, 660, 300 S.E.2d 375, 378 (1983). "To constitute plain error, defendant bears the burden of convincing the appellate court that absent the error, the jury probably would have reached a different verdict." *State v. Cromartie*, 177 N.C. App. 73, 76, 627 S.E.2d 677, 679 (citing *Odom*, 307 N.C. at 661, 300 S.E.2d at 379), *disc. rev. denied*, 360 N.C. 539, 634 S.E.2d 538 (2006). Where the evidence is sufficient to support the offense submitted to the jury, it is not plain error for the trial court to refuse to submit a lesser charge. *See State v. Riley*, 159 N.C. App. 546, 554, 583 S.E.2d 379, 385 (2003) ("All of the evidence tends to show that defendant shot at the crowd with the intent to kill, and therefore it was not plain error for the trial court to refuse to submit the charge of misdemeanor assault with a deadly weapon to the jury.").

A.

Defendant first contends he is entitled to a new trial for assault with a deadly weapon with intent to kill inflicting serious injury of Mr. Locklear because the trial court failed to submit the lesser included offense of assault with a deadly weapon inflicting serious injury to the jury. We disagree.

"The only difference in what the State must prove for the offense of assault with a deadly weapon inflicting serious injury and assault with a deadly weapon with intent to kill inflicting serious injury is the element of intent to kill." *Cromartie*, 177 N.C. App. at 76, 627 S.E.2d at 680 (citing *State v. Grigsby*, 351 N.C. 454, 526 S.E.2d 460 (2000)). "The defendant's intent to kill may be inferred from the nature of the assault, the manner in which it was made, the conduct of the parties, and other relevant circumstances." *Id.* (citations omitted).

Here, the evidence establishes that Defendant broke into Ms. Jacobs' trailer in the middle of the night and used an iron pipe to beat Mr. Locklear, who was unarmed, naked, and had just woken up. Defendant hit Mr. Locklear three or four times with the pipe while he was on the floor on all fours and hit him in the head two more times

after Mr. Locklear had collapsed. Where the defendant repeatedly hits the victim with a metal pipe, *State v. Hensley*, 91 N.C. App. 282, 284, 371 S.E.2d 498, 499 (1988) (noting that defendant repeatedly beat the victim "with a metal walking cane, a weapon clearly capable from our observation of inflicting a lethal wound when used as a club") (citation omitted), *disc. rev. denied*, 323 N.C. 627, 374 S.E.2d 595 (1988), this constitutes evidence from which intent to kill may be inferred. Moreover, Defendant repeatedly hit Mr. Locklear in his head, a sensitive and critical area of the body. This also demonstrates an intent to kill since "an assailant must be held to intend the natural consequences of his deliberate act." *Cromartie*, 177 N.C. App. at 77, 627 S.E.2d at 680 (citation omitted) (inferring an intent to kill when the defendant shot the victim in the torso "where the majority of his major organs are located"). Based on the record, we conclude that Defendant has failed to demonstrate plain error.

### B.

Defendant next contends he is entitled to a new trial for assault with a deadly weapon inflicting serious injury of Ms. Jacobs because the trial court failed to submit the lesser included offense of assault with a deadly weapon to the jury. We disagree.

"[O]ur Supreme Court has stated that the term 'serious injury' under N.C. Gen. Stat. § 14-32(a) means a physical or bodily injury which results from an assault with a deadly weapon, determined according to the facts of each case." *State v. Crisp*, 126 N.C. App. 30, 36, 483 S.E.2d 462, 466 (citations omitted), *disc. rev. denied*, 346 N.C. 284, 487 S.E.2d 559 (1997). "Generally, whether a serious injury has been inflicted depends upon the facts of each case and is generally for the jury to decide under appropriate instructions. Pertinent factors for jury consideration include hospitalization, pain, blood loss, and time lost at work." *State v. Uvalle*, 151 N.C. App. 446, 454, 565 S.E.2d 727, 732 (2002) (citations omitted), *disc. rev. denied*, 356 N.C. 692, 579 S.E.2d 95 (2003).

In the instant case, the evidence establishes that after Defendant broke into the trailer, he hit Ms. Jacobs, most likely with the iron pipe, on her shoulder and on her knee as she lay in the bed. Ms. Jacobs testified the hits injured her, "but when you are in such shock and scared I was able to run to the neighbor's house." After calling 911, Ms. Jacobs stated that she realized she could hardly walk and was limping badly. Ms. Jacobs was taken to the hospital where she received treatment for and x-rays of her knee. Ms. Jacobs testified to

having "contusions and several bruises [on her knee] where I could not walk for about a week and a half. I had to use crutches for about a week and a half." She also stated her knee still hurt at the time of trial, especially on cold or rainy days.

We have previously held a similar knee injury constitutes sufficient evidence of serious injury as required to support a conviction for assault with a deadly weapon inflicting serious injury. *See State v. Tice*, 191 N.C. App. 506, 510, 664 S.E.2d 368, 371 (2008) (finding sufficient evidence to show the victim sustained a serious injury where the victim went to the hospital, took pain medication for two weeks, walked with a limp for one to two weeks, and did not fully heal for approximately one month after being shot in the knee).

Our review of the whole record fails to convince us that absent the alleged error, the jury probably would have reached a different verdict. Therefore, Defendant has not carried his burdenof showing plain error.

## VII.

[7] Defendant next contends he is entitled to a new sentencing hearing because the trial court erred in its classification and assignment of points to two out-of-state convictions. Specifically, Defendant argues the State did not produce any evidence that his 1980 Connecticut conviction for robbery in the third degree and his 1985 New York conviction for attempted murder in the second degree were substantially similar to any North Carolina offenses, and the trial court did not make any substantial similarity conclusions. We agree.

"The trial court's assignment of a prior record level is a conclusion of law which we review *de novo*." *State v. Goodwin*, 190 N.C. App. 570, 576, 661 S.E.2d 46, 50 (2008) (citation omitted). With regard to prior record level points allocation for an out-of-state conviction, our legislature has enacted the following:

> If the State proves by the preponderance of the evidence that an offense classified as either a misdemeanor or a felony in the other jurisdiction is substantially similar to an offense in North Carolina that is classified as a Class I felony or higher, the conviction ·is treated as that class of felony for assigning prior record level points.

N.C. Gen. Stat. § 15A-1340.14(e) (2009). A defendant may stipulate that he or she "has been convicted of a particular out-of-state offense

and that this offense is either a felony or a misdemeanor under the law of that jurisdiction." *State v. Bohler*, 198 N.C. App. 631, 637-38, 681 S.E.2d 801, 806 (2009), *disc. rev. denied*, —— N.C. ——, 691 S.E.2d 414 (2010). However,

> the question of whether a conviction under an out-of-state statute is substantially similar to an offense under North Carolina statutes is a question of law to be resolved by the trial court, and stipulations as to questions of law are generally held invalid and ineffective, and not binding upon the courts, either trial or appellate.

*State v. Moore*, 188 N.C. App. 416, 426, 656 S.E.2d 287, 293 (2008) (quoting *State v. Palmateer*, 179 N.C. App. 579, 581, 634 S.E.2d 592, 593 (2006)).

Here, at the sentencing hearing, the prosecutor submitted a prior record level worksheet listing five of Defendant's prior convictions, including a 1980 Connecticut conviction for robbery in the third degree, listed as a Class G offense, and a 1985 New York conviction for attempted murder in the second degree, listed as a Class C offense. Defendant stipulated to his previous convictions, indicating that the convictions were valid and that he had received them. Following Defendant's stipulation, the prosecutor introduced sentencing exhibits, including: (1) exhibit 2A, a certified letter from the State of Connecticut Office of the Clerk, showing Defendant was convicted of the Connecticut crime of "robbery 3rd degree" pursuant to Ct. Gen. Stat. § 53a-136; (2) exhibit 3A, Commitment to the State Department of Corrections, showing Defendant was convicted of the New York crime of "Attempted Murder 2nd Degree"; and (3) exhibits 2B and 3B, records of Defendant's fingerprints from the Connecticut and New York police departments. Based on the prosecutor's prior record level worksheet and exhibits, and Defendant's stipulation, the trial court treated the 1980 Connecticut conviction as a Class G felony, treated the 1985 New York conviction as a Class C felony, and assigned 4 and 6 prior record points, respectively. The trial court concluded Defendant had 15 prior points, placing him at prior record level V for sentencing purposes. The trial court, however, did not make a substantial similarity conclusion.

Determining whether an out-of-state conviction is substantially similar to a North Carolina offense is a question of law involving the comparison of the elements of the out-of-state offense to those of the North Carolina offense. *State v. Fortney*, ——, N.C. App. ——, ——, 687 S.E.2d 518, 525 (2010). In the instant case, the State provided

evidence that Defendant was convicted of "robbery 3rd degree" under Ct. Gen. Stat. § 53a-136, but did not provide evidence of the New York statute under which Defendant was convicted. Furthermore, the State neither provided copies of the applicable Connecticut and New York statutes, nor provided a comparison of their provisions to the criminal laws of North Carolina. *See State v. Morgan*, 164 N.C. App. 298, 309, 595 S.E.2d 804, 812 (2004) (remanded for resentencing where the State presented a copy of the 2002 New Jersey homicide statute, but presented no evidence that the 2002 New Jersey homicide statute was unchanged from the 1987 version under which defendant was convicted); *compare State v. Rich*, 130 N.C. App. 113, 117, 502 S.E.2d 49, 52 (holding that copies of New Jersey and New York statutes and a comparison of their provisions to the criminal laws of North Carolina were sufficient to prove by a preponderance of the evidence that defendant's convictions in those states were substantially similar to North Carolina crimes for purposes of section 15A-1340.14(e)), *disc. review denied*, 349 N.C. 237, 516 S.E.2d 605 (1998). Finally, the trial court did not analyze or determine whether the out-of-state convictions were substantially similar to North Carolina offenses. *See Fortney*, —— N.C. App. at ——, 687 S.E.2d at 525 (holding that the trial court erred by failing to determine whether defendant's New York assault conviction was substantially similar to a North Carolina offense, but did not err in treating defendant's Virginia conviction as a Class G felony where it made "the finding of the statute being similar in Virginia and North Carolina").

Since the State failed to demonstrate the substantial similarity of Defendant's out-of-state convictions to North Carolina crimes and since the trial court failed to determine whether the out-of-state convictions were substantially similar to North Carolina offenses, we must remand for resentencing.

## VIII.

[8] Defendant lastly argues at least one of his four convictions related to the assault of Mr. Locklear must be arrested because entry of judgment on all four violates due process and *State v. Fulcher*.

Defendant failed to raise a constitutional question at trial regarding his four convictions related to the assault of Mr. Locklear. Accordingly, Defendant failed to preserve this issue for appellate review. *State v. Anderson*, 355 N.C. 136, 140, 558 S.E.2d 87, 91 (2002) ("[D]efendant did not assert at trial any constitutional basis in support of his request for the instruction. Thus, he has waived appellate

review of his constitutional challenges to the court's ruling."), *State v. Hunter*, 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982) ("[A] constitutional question which is not raised and passed upon in the trial court will not ordinarily be considered on appeal."). Additionally, we vacate Defendant's conviction for secret assault of Mr. Locklear. Thus, we will not address this argument.

In sum, we vacate Defendant's conviction for secret assault of Mr. Locklear and remand for resentencing.

Vacated in part and remanded for resentencing.

Chief Judge MARTIN and Judge McGEE concur.