IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-1012

Filed 15 October 2024

Cleveland County, Nos. 22 CRS 51269, 22 CRS 51271, 22 CRS 538

STATE OF NORTH CAROLINA

v.

WILLIAM SHAWN SANDEFUR, Defendant.

Appeal by defendant from judgments entered 6 March 2023 by Judge Hugh B. Lewis in Superior Court, Cleveland County. Heard in the Court of Appeals 24 September 2024.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Tanisha D. Folks, for the State.*
>
> *Sandra Payne Hagood for defendant-appellant.*

STROUD, Judge.

Defendant William Shawn Sandefur appeals from judgments entered following a jury trial finding him guilty of (1) possession of firearm by felon, (2) possession of methamphetamine, (3) possession of drug paraphernalia, (4) misdemeanor carrying a concealed gun, and (5) possession of burglary tools. Defendant argues the trial court erred in sentencing him at prior record level V based upon its erroneous classification of two prior convictions from Kentucky. Because the State failed to present sufficient evidence to support the trial court's classification of the two Kentucky felonies for purposes of determining Defendant's prior record level, we must remand for

resentencing.

## I.    Background

The State's evidence tended to show that on 14 April 2022 the Cleveland County Sheriff's Office received a call reporting suspicious activity and a potential breaking and entering in progress at a house on Mooresboro Road. The caller, Tamara McCurry, indicated a man, carrying bolt cutters, was at the house and was driving a white Kia Soul with a yellow bumper sticker. The house was owned by Ms. McCurry's uncle, but Ms. McCurry had power of attorney to oversee the property since her uncle's transition into a nursing home in 2021.

Patrol Deputy Elijah Spurling was dispatched to the address. Before Deputy Spurling could arrive on scene, however, Ms. McCurry called again to inform law enforcement that the suspect had left the home and was traveling towards Ellenboro Road. After redirecting and traveling in that direction, Deputy Spurling noticed a vehicle matching the description parked outside of a convenience store, Deb's Mini Mart, on Ellenboro Road.

Deputy Spurling pulled into the convenience store parking lot at 7:56 p.m. and parked his vehicle without initiating his blue lights. Deputy Spurling approached the vehicle and started a conversation with Defendant. Deputy Spurling began questioning Defendant as to what he was doing at the Mooresboro Road home. Defendant admitted to being at the home, exited his vehicle, and proceeded to show Deputy Spurling the contents of the vehicle's trunk, which included bolt cutters.

When asked what he was doing at the home with the bolt cutters, Defendant stated he was obtaining some items from the home that belonged to him. Specifically, Defendant indicated to Deputy Spurling he was going to see a friend, Rocky Sloan, who was allegedly living at the home and had some tire rims and soundbars belonging to Defendant.

After obtaining Defendant's identification, Deputy Spurling returned to his vehicle to begin running routine checks. Deputy Lesmeister, who was also on scene, remained outside talking with Defendant while Deputy Spurling was conducting his investigation. At some point, Deputy Spurling called for a K-9 unit, Deputy Bonino, who arrived on scene at 9:00 p.m. Deputy Spurling asked for Deputy Bonino to perform a K-9 sniff around Defendant's vehicle. In performing the drug sniff, Deputy Bonino's K-9 alerted to the potential presence of narcotics within Defendant's vehicle.

Based upon the K-9's positive narcotics alert, Deputy Spurling returned to Defendant's vehicle to perform a search. This search revealed a Smith & Wesson 9-millimeter handgun concealed within the vehicle's center console, ammunition, and a lockbox located in the rear of the vehicle. Inside the lockbox was about a gram of a clear, crystal substance, and three glass pipes commonly used for smoking narcotics.

On 16 May 2022, a Cleveland County grand jury indicted Defendant for possession of firearm by felon, possession of methamphetamine, possession of drug paraphernalia, possession of burglary tools, misdemeanor carrying a concealed gun, and misdemeanor driving while license revoked. The case came on for trial at the 1

March 2023 session of the Superior Court, Cleveland County. At the close of the State's case, the State dismissed the driving while license revoked charge. On 6 March 2023, a jury found Defendant guilty of all remaining charges.

During sentencing, the trial court allotted Defendant 16 prior record level felony points, placing him at prior record Level V for sentencing purposes. In concluding this prior record level, the trial court relied on a prior record level worksheet submitted by the State, identifying several out-of-state convictions obtained by Defendant in Kentucky. Defendant appeals.

## II. Analysis

On appeal, Defendant argues the trial court erred in calculating his prior record level for sentencing purposes. Specifically, Defendant contends the trial court improperly classified two prior, out-of-state convictions as G and F level felonies when the State failed to meet its burden in establishing these convictions were substantially similar to North Carolina offenses. Due to this alleged misclassification, Defendant argues the trial court improperly sentenced him under a prior record level V when he should have been sentenced under a prior record level IV. We agree with Defendant and conclude the State failed to meet its burden in establishing substantial similarity.

> The determination of an offender's prior record level is a conclusion of law that is subject to *de novo* review on appeal. It is not necessary that an objection be lodged at the sentencing hearing in order for a claim that the record evidence does not support the trial court's determination of

a defendant's prior record level to be preserved for appellate review.

*State v. Bohler*, 198 N.C. App. 631, 633, 681 S.E.2d 801, 804 (2009) (citations omitted).

Under North Carolina General Statute Section 15A-1340.14, "[t]he prior record level of a felony offender is determined by calculating the sum of points assigned to each of the offender's prior convictions that the court . . . finds to have been proved in accordance with this section." N.C. Gen. Stat. § 15A-1340.14(a) (2023). For the classification of prior convictions occurring outside of North Carolina, "[e]xcept as otherwise provided in this subsection, a conviction occurring in a jurisdiction other than North Carolina is classified as a Class I felony if the jurisdiction in which the offense occurred classifies the offense as a felony[.]" N.C. Gen. Stat. § 15A-1340.14(e) (2023). If the State wishes to classify a prior out-of-state conviction as higher than the baseline Class I, it must meet its burden of showing substantial similarity between the out-of-state conviction and a North Carolina offense:

> If the State proves by the preponderance of the evidence that an offense classified as either a misdemeanor or a felony in the other jurisdiction is substantially similar to an offense in North Carolina that is classified as a Class I felony or higher, the conviction is treated as that class of felony for assigning prior record level points.

*Id.* Thus, to calculate prior record level, the baseline classification for out-of-state felonies is Class I, unless the State can prove substantial similarity between the out-of-state conviction(s) and their respective North Carolina offense classification(s). *See id.*

The main issue we are presented with is whether the State met its burden in showing substantial similarity between Defendant's past Kentucky convictions and their respective North Carolina offenses for the purpose of determining his prior record level. Defendant argues, and we agree, the State did not present sufficient evidence to show the out-of-state convictions were substantially similar to North Carolina offenses.

To show substantial similarity, the State must submit to the trial court a copy of the applicable out-of-state statute it claims to be substantially similar to a North Carolina offense. *See State v. Sanders*, 367 N.C. 716, 718, 766 S.E.2d 331, 332 (2014) ("[T]he Court of Appeals has consistently held that when evidence of the applicable law is not presented to the trial court, the party seeking a determination of substantial similarity has failed to meet its burden of establishing substantial similarity by a preponderance of the evidence." (citations omitted)). After the State has identified the applicable out-of-state statute, the "[d]etermination of whether the out-of-state conviction is substantially similar to a North Carolina offense is a question of law involving comparison of the elements of the out-of-state offense to those of the North Carolina Offense." *State v. Fortney*, 201 N.C. App. 662, 671, 687 S.E.2d 518, 525 (2010) (citation omitted).

During sentencing, the State submitted to the trial court Defendant's prior record level worksheet, which shows Defendant had several prior convictions in Kentucky. Although this worksheet lists Defendant's prior convictions obtained in

states other than North Carolina, there is no reference to the applicable statutes defining those offenses within their respective jurisdictions. Defendant argues on appeal, and the State concedes, this worksheet was the only evidence submitted for the purpose of identifying Defendant's prior convictions.

The State also further concedes neither the State nor the trial court conducted any comparative analysis of the elements of Defendant's prior convictions. In submitting the prior record level worksheet, the State stated "[a]s for sentencing, Your Honor, I believe the record – the record speaks for itself and the prior convictions speak for themselves and we just leave – obviously leave it in your discretion, but we don't have a position one way or another." Neither the State nor the trial court engaged in any further discussion of alleged similarity between the out-of-state convictions and North Carolina offenses.

Because the State failed to identify the applicable statutes, and no comparison of the elements took place at the trial court during sentencing, the State did not meet its burden to establish substantial similarity for purposes of determining Defendant's prior record level. *See State v. Wright*, 210 N.C. App. 52, 71-72, 708 S.E.2d 112, 126 (2011) (concluding substantial similarity had not been established when the State failed to provide sufficient evidence of the applicable out-of-state statutes under which the defendant was previously convicted, and where the trial court failed to conduct any form of analysis of the elements between the out-of-state convictions and North Carolina offenses).

Although the State concedes its failure to adequately identify the applicable Kentucky statutes and to address the comparison of the elements, the State still contends it should prevail on appeal. Specifically, the State argues these shortcomings are harmless error and that under *de novo* review, this Court can properly determine whether the Kentucky offenses are substantially similar to a North Carolina offense. In making this argument, the State presents, for the first time within its brief, the allegedly applicable Kentucky statutes "obvious[ly]" referenced by Defendant's prior record level worksheet. The State contends there are no other potential crimes defined within Kentucky's criminal code that could apply to the alleged offenses.

But this Court has previously rejected this argument. In *State v. Henderson*, the State failed to demonstrate substantial similarity before the trial court and on appeal this Court noted:

> [T]he State identifies in its brief the statutes under which it contends that defendant was convicted in South Carolina and Pennsylvania and argues that these statutes establish the necessary substantial similarity. The State did not identify these South Carolina and Pennsylvania statutes during sentencing before the trial court or in the record on appeal.

*State v. Henderson*, 201 N.C. App. 381, 388, 689 S.E.2d 462, 467 (2009). We recognized "it may be possible for a record [on appeal] to contain sufficient information regarding an out-of-state conviction for this Court to determine if it is substantially similar to a North Carolina offense," but that record did not contain

sufficient evidence of the applicable out-of-state statutes and this Court "will not speculate as to whether the State has for the first time, in its brief on appeal, properly identified the out-of-state statutes for comparison." *Id*. Here, as in *Henderson*, the record before us does not contain sufficient evidence to identify the applicable Kentucky statutes to conduct a substantial similarity analysis of our own.

Because the State failed to meet its burden to establish substantial similarity of Defendant's Kentucky offenses to North Carolina crimes which would carry the sentencing points as assigned by the trial court and because we lack the information necessary to conduct our own substantial similarity analysis for harmless error purposes, we must remand for resentencing. At the resentencing hearing, the trial court may consider additional information presented by the State or by Defendant regarding Defendant's prior offenses. *See id.*

### III.   Conclusion

We conclude the trial court erred in assigning Defendant 16 prior record level points based on his out-of-state convictions where the State failed to meet its burden to establish substantial similarity between the out-of-state convictions and North Carolina offenses. Accordingly, we remand for resentencing.

REMANDED FOR RESENTENCING.

Judges ZACHARY and HAMPSON concur.